177 N.J. Super. 566 (1979)
MARK A. D'EUSTACHIO, PLAINTIFF,
v.
CITY OF BEVERLY, BEVERLY FIRE COMPANY NO. 1, HOPE HOSE FIRE COMPANY NO. 2, DEFENDANTS AND THIRD-PARTY PLAINTIFFS, AND WILLINGBORO FIRE COMPANY, DELANCO FIRE COMPANY AND BEVERLY ROAD FIRE COMPANY, DEFENDANTS,
v.
INSURANCE COMPANY OF NORTH AMERICA AND OHIO CASUALTY GROUP OF INSURANCE COMPANIES, THIRD-PARTY DEFENDANTS.
Superior Court of New Jersey, Law Division Burlington County.
Decided December 12, 1979.
*568 John Lee Madden, for plaintiff.
Bernadette A. Duncan for defendant, City of Beverly (Timothy E. Annin, attorney).
Louis A. Colaguori for defendants Beverly Fire Company No. 1 and Hope Hose Fire Company No. 2 (Bookbinder, Colaguori & Bookbinder, attorneys).
Elliott Yampell for third-party defendant Insurance Company of North America (Yampell & Cosentino, attorneys).
Frederick Fitchett for third-party defendant Ohio Casualty Group of Insurance Companies (Bleakly, Stockwell and Zink, attorneys).
Phillip Lezenby for defendant Willingboro Fire Company (Moss, Powell and Powers, attorneys).
Michael J. Weiss for defendant Delanco Fire Company (Montano, Summer, Mullen and Manuel, attorneys).
William V. Webster for defendant Beverly Road Fire Company (Parker, McCay and Criscuolo, attorneys).
Laurence A. Hecker filed a brief and argued amicus curiae for the N.J. Association of Fire Districts.
WELLS, J.S.C.
This is a motion by Insurance Company of North America (INA) for summary judgment dismissing a third-party complaint brought be two volunteer fire companies of Beverly, New Jersey, seeking coverage and legal defense of a tort claim *569 against the two companies. Although such is the procedural context of the motion, there does not appear on this motion, at least, any issue relating to actual coverage under INA's policy; rather, INA asserts the two companies did not have notice of the tort claim against them under the New Jersey Tort Claim Act (hereinafter "act") and it is contended the tort action itself is that which ought to be dismissed. The fire companies, independently represented before the court, join INA's motion insofar as it asks dismissal of the tort action against them without prejudice to their right to demand coverage and defense in the tort action should the motion be denied.[1] Counsel for the New Jersey State Association of Fire Districts was also permitted to file a brief amicus curiae and argue on behalf of the fire companies. Implicated in the matter are the issues of whether these volunteer fire companies are public entities under the Tort Claims Act, N.J.S.A. 59:1-1 et seq., the validity of notice to them under the act and whether the companies are immune under N.J.S.A. 2A:53A-13.1.
The facts around which this controversy boils, undisputed for the purposes of this motion, are as follows: Plaintiff Mark D'Eustachio is a property owner of the City of Beverly. On Sunday, October 16, 1977, defendants Beverly Fire Company No. *570 1 (hereinafter No. 1), Hope Hose Fire Company No. 2 (hereinafter No. 2), Willingboro Fire Company, Delanco Fire Company and Beverly Road Fire Company[2] gathered at or near D'Eustachio's property to conduct a fire drill under the leadership and control of Buck McNinney, the chief of No. 1 and No. 2. What happened next was none too dispassionately described in a letter D'Eustachio wrote to McNinney four days after the incident:
Extensive damages were incurred by me as the result of your recent fire drill. My fields were already soggy from recent rains, but were completely flooded when thousands of gallons of water were pumped at full force onto my property on Broad Street in Edgewater Park, to which you can attest.
You will recall I contacted you at the time of the drill expressing concern for my thoroughbreds, the several mares which were in foal, and the young foals also, and requested an immediate stoppage of the drill.
As a result of all the commotion and noise involved in this drill (radios, loud speakers, water sprays, motors and mass confusion) several horses were injured by running rampant and going through fences.
In addition, a young foal out of an expensive mare which had produced numerous winners was lost. I had to have a veterinarian in attendance for the injured thoroughbreds, but he was unable to save the foal because of injuries suffered.
Much later, when No. 1 and No. 2 had defaulted in this action, plaintiff, on oral proofs, established over $16,000 in damages for losses sustained.[3]
On January 16, 1978 plaintiff's counsel wrote a detailed letter to the City of Beverly complying with N.J.S.A. 59:8-4 in form and content. When no satisfaction was forthcoming, this action, which originally named only the City of Beverly and No. 1 and No. 2 as defendants, was filed on July 18, 1978. Later the city joined the other three companies.
Both No. 1 and No. 2 are physically situate in Beverly and regularly provide firefighting services therein. Both were privately *571 incorporated as volunteer fire companies in the late 1800s and own their respective buildings and all their firefighting equipment. It also appears that the relationship between the two volunteer fire companies and the City of Beverly is governed by a 1970 ordinance which, in legal effect, designates a chief and assistant chief elected by and from among the membership of the two companies and "as many firemen as now or hereafter become members of the fire companies of the city" as the city fire department. Membership in the companies is by election of the other members, subject to approval of the city's governing body. The ordinance generally imposes a duty on the membership to fight fires and to respond to alarms within Beverly. It also requires attendance at fire drills. The ordinance recites as its authority R.S. 40:47-26 et seq.[4] The city also gives cash contributions, unspecified in amount, to each company under N.J.S.A. 40A:14-33 and 34. In all of these respects No. 1 and No. 2 are factually and legally distinguishable from "paid" or "part-paid" fire departments under N.J.S.A. 40A:14-7, 9.1, 41 and 42, and from Boards of fire commissioners heading a fire district under N.J.S.A. 40A:14-70 et seq.
The position taken by INA (and the companies themselves) on this motion is that neither company was served with notice of claim under the Tort Claims Act. N.J.S.A. 59:8-7. Entitlement to such notice is based on the contention that the companies are "public entities" as defined in N.J.S.A. 59:1-3. Thus, the status of No. 1 and No. 2 under the act must be decided. If, as plaintiff and the city urge, the fire companies are not entitled to status as "public entities," then, of course, no notice prior to suit was required.
There is certainly much in our existing law which augers for declaring these volunteer fire companies public entities.
The comment to N.J.S.A. 59:1-3 states:

*572 The definition of "public entity" provided in this section is intended to be all inclusive and to apply uniformly throughout the State of New Jersey to all entities exercising governmental functions.
And, in point of fact, virtually every statutory reference concerning volunteer companies refers to fire protection as a governmental function. See e.g., N.J.S.A. 40A:14-68 wherein the expression "governmental function" is actually used. Municipalities must provide worker's compensation for volunteer firemen, and the statute so requiring, N.J.S.A. 34:15-43, describes the work as "public fire duty." Compensation coverage is even required during an "authorized public drill." Id. The very fact that municipalities are authorized to and do contribute money and/or equipment raised or paid for out of tax revenues to volunteer companies under N.J.S.A. 40A:14-33, 34 and 35 strongly suggests the existence and importance of the public function volunteer fire companies perform. Indeed, one case held that a township was permitted to condemn land and lease it rent-free to its volunteer fire company as a valid public purpose under the condemnation statute. Willingboro Tp. v. Mobil Oil Corp., 159 N.J. Super. 593 (App.Div. 1978). Finally, in Schwartz v. Stockton, 32 N.J. 141 (1960) the Supreme Court stated:
There is general uniformity throughout the country that fire protection, including the operation and maintenance of fire apparatus and the construction and management of fire houses and other fire-fighting facilities, is a governmental function as far as tort liability is concerned. [at 150]
Furthermore, the 1970 ordinance draws these two companies so closely under Beverly's wing as to invest them with governmental powers in the matter of fire prevention and control. See S.E.W. Friel Co. v. N.J. Turnpike Auth.,, 73 N.J. 107 (1977) (holding the Turnpike Authority to be a public entity); English v. Newark Housing Auth.,, 138 N.J. Super. 425 (App. Div. 1976); LaBarrie v. Jersey City Housing Auth., 143 N.J. Super. 61 (Law Div. 1976) (both holding municipal housing authorities to be public entities); Wade v. N.J. Turnpike Auth., 132 N.J. Super. 92, 97-98 (Law Div. 1975). No. 1 and No. 2 are as much a department of the city as is its police department. It makes no difference the volunteers are not paid. They nonetheless bear a *573 continuing, enforceable, legal obligation to fight fires, and in so doing perform as much a governmental function as a housing or a turnpike authority.
Accordingly, the court finds No. 1 and No. 2 are public entities within the meaning of N.J.S.A. 59:1-3. It also finds that the D'Eustachio letter quoted above and its service upon Chief McNinney by certified mail is in substantial compliance with N.J.S.A. 59:8-4 and 10 and constitutes notice under the act. So does counsel's letter of January 16, 1978 directed to the city itself. Cf. Dambro v. Union Cty. Park Comm., 130 N.J. Super. 450 (Law Div. 1974).
Having determined that No. 1 and No. 2 are public entities under the Tort Claims Act and have been properly served with notice pursuant to that act, the court must now decide the relationship between N.J.S.A. 2A:53A-13.1 and the Tort Claims Act and the precise scope of the immunity-liability spectrum afforded by these enactments.
Initially, the court notes that individual members of a volunteer fire company have been cloaked with immunity from tort claims since May 28, 1963, nine years before the Tort Claims Act, for "emergency public first aid and rescue services or service for the control and extinguishment of fires or both...." N.J.S.A. 2A:53A-13. This immunity is strictly limited to the situs of emergency, since the statute expressly continues the common law liability of firemen for negligence in getting to the emergency scene via motor vehicle. Cf. Florio v. Jersey City, 101 N.J.L. 535 (E. & A. 1925). Even at the situs the statute expressly excepts from immunity any "willful or wanton act of commission or omission." N.J.S.A. 2A:53A-13.
After the effective date of the Tort Claims Act, any volunteer firemen of No. 1 and No. 2 could claim the immunity provided by N.J.S.A. 2A:53A-13 through and under the Tort *574 Claims Act, N.J.S.A. 59:3-1(b).[5] Thus members of No. 1 and No. 2 possess an absolute immunity from claims of damage arising out of simple negligence occurring at the situs of an emergency, but remain liable at other times and places "for injury caused by his act or omission to the same extent as a private person." N.J.S.A. 59:3-1(a). Since it is clear that no private person has the right on pain of civil liability to pump thousands of gallons of water at full force on another's property, cf. Hennessy v. Carmony, 50 N.J. Eq. 616, 618 (Ch. 1892), neither does a volunteer fireman, even during an authorized fire drill. The court holds a drill is not an emergency service for the control and extinguishment of fire within the plain meaning of these words and hence is not immunized under N.J.S.A. 2A:53A-13 and is not now immunized under the Tort Claims Act.
Turning to the companies themselves as incorporated public entities as distinct from their individual members, the court holds that the firemen's immunity and liability as defined above passes vicariously to the incorporated entity under the statutory embodiment of respondeat superior found in N.J.S.A. 59:2-2. For that reason summary judgment cannot be granted dismissing this claim against No. 1 and No. 2. The corporate trespass is no more immunized than that of its individual members.
However, the court does not rely entirely on the status of volunteer firemen as public employees and respondeat superior to make liable the fire companies themselves. Three years after the act the Legislature adopted N.J.S.A. 2A:53A-13.1 which, in language virtually identical to N.J.S.A. 2A:53A-13, specifically provided volunteer fire companies an immunity of the same *575 limited nature and scope as had formerly applied only to volunteers. This provision must be read as one of the immunities protected by and through the act, N.J.S.A. 59:2-1(b), even though it was enacted after the act. Clearly, the Legislature did not bind itself to a fixed immunity-liability balance when it adopted the Tort Claims Act. It may from time to time adjust that balance as public policy and the public interest dictate, and this court has no difficulty in interpreting N.J.S.A. 59:2-1(b) as including a specific immunity enacted after the act. Cf. Trimblett v. State, 156 N.J. Super. 291 (App. Div. 1977); Diodato v. Camden Cty. Park Comm., 162 N.J. Super. 275 (Law Div. 1976). Lest there be any doubt, the court once again states its opinion that N.J.S.A. 2A:53A-13.1, immunizes simple negligence at the situs of an emergency or bona fide suspected emergency and that a fire drill is not an emergency.
Thus the court holds that the limited immunity conferred by N.J.S.A. 2A:53-13 and 13.1 is preserved and implemented through the act, in case of volunteers through N.J.S.A. 59:3-1(b) and, in the case of companies through N.J.S.A. 59:2-1(b), but, under the facts here, no emergency existed under either N.J.S.A. 2A:53-13 and 13.1 and accordingly the motion for dismissal must be denied.
NOTES
[1] This case has been unduly complicated by controversy over insurance coverage. Apparently, three general liability policies with INA were in force, one covering the City of Beverly and one covering each of the fire companies. When suit was filed INA assumed the defense of the city, but virtually stood by and watched as default judgment was entered against the two companies. See text infra. Thus, the fire companies were forced to retain private counsel who filed the third-party complaint. Part of the reason for INA's refusal to defend the companies was the fact that the companies' mobile equipment was covered under policies with Ohio Casualty Group, and INA and Ohio Casualty could not decide which, if either of them, covered this specific claim.

Eventually, however, INA did engage another attorney, who answered for the companies and filed the instant motion. At argument on the motion the two counsel for INA took contrary positions on the issue of the status of the fire companies as public entities under the Tort Claims Act. The city contended that the companies are not public entities while the companies themselves sought refuge under the act.
[2] The legal status of the latter three companies as public entities is not decided by this opinion, but by a separate letter opinion which will be filed shortly.
[3] Default judgment for $16,700.54 was entered. After the court refused to permit the companies to reopen the case the Appellate Division reversed and remanded the matter. See Docket A-3154-78.
[4] That statute has been repealed. Nonetheless, no one in this case disputes the continuing validity of the ordinance under N.J.S.A. 40A:14-33 and N.J.S.A. 40A:14-68, which replaced N.J.S.A. 40:47-26.
[5] For the limited purposes of the Tort Claims Act the court has no difficulty in considering volunteer firemen as public employees. While not paid, they are under the control of the fire chief and act in the broadest sense as his agents pursuant to the ordinance for implementing fire control within Beverly. It has already been noted that firemen are covered by city funded worker's compensation insurance.