810 A.2d 77 (2002)
355 N.J. Super. 278
Cori PALLISTER, Plaintiff-Appellant,
v.
SPOTSWOOD FIRST AID SQUAD and Robert S. Ward, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued November 6, 2002.
Decided November 22, 2002.
*78 Samuel R. Mechanic, Montclair, argued the cause for appellant.
Everett E. Gale, III, argued the cause for respondents (Hardin, Kundla, McKeon, Poletto & Polifroni, attorneys; Mr. Gale, on the brief).
Before Judges STERN, COBURN and ALLEY.
The opinion of the court was delivered by STERN, P.J.A.D.
Plaintiff appeals from an order of October 26, 2001, granting summary judgment and dismissing her complaint as barred under the Tort Claims Act ("TCA"), N.J.S.A. 59:1-1 et seq. She contends that "the Spotswood Volunteer First Aid Squad is not a public entity subject to the New Jersey Tort Claim[s] Act" and that "plaintiff is entitled to have the nature and extent of her injuries evaluated by a jury to a[ss]ess damages without a threshold being considered." Plaintiff, who was being transported to a hospital as a result of an emergency call, was riding in defendant Spotswood First Aid Squad's ambulance, driven by defendant Robert Ward, when it hit a parked car. It is uncontested that she did not suffer an injury which was "substantial," see Gilhooley v. County of Union, 164 N.J. 533, 753 A.2d 1137 (2000); Brooks v. Odom, 150 N.J. 395, 696 A.2d 619 (1997), and that the complaint must, therefore, be dismissed if the TCA applies and, consequently, its threshold must be satisfied.
Plaintiff claims that she does not have to satisfy the threshold under the TCA because the voluntary first aid squad is not a "public entity." She contends that the role and nature of a first aid squad is different from a voluntary fire company and other entities which have been held to be protected by the TCA. She specifically asserts:
The services provided by first-aiders are more analogous to those practiced by the various charitable organizations that provide for help, aid and assistance in case of need without governmental involvement or control.
Prior to adoption of the TCA, the Legislature adopted N.J.S.A. 2A:53A-12 which, after an immaterial amendment in 1977, now provides:
No member of a volunteer first aid, rescue or emergency squad, or volunteer member of the National Ski Patrol System, which provides emergency public first aid and rescue services shall be liable in any civil action to respond in damages as a result of his acts of commission or omission arising out of and in the course of his rendering in good faith any such services as such member but such immunity from liability shall not extend to the operation of any motor vehicle in connection with such services.
Nothing herein shall be deemed to grant any such immunity to any person causing damage by his willful or wanton act of commission or omission.
In 1963, the Legislature adopted a companion statute, N.J.S.A. 2A:53A-13, which now reads:
No member of a volunteer fire company, which provides emergency public first aid and rescue services or services for the control and extinguishment of fires, or both, and no authorized active volunteer first aid or rescue squad *79 worker who is not a member of the volunteer fire company within which the first aid or rescue squad may have been created, doing public first aid or rescue duty, shall be liable in any civil action to respond in damages as a result of his acts of commission or omission arising out of and in the course of his rendering in good faith any such services, or arising out of and in the course of participation in any authorized drill, but such immunity from liability shall not extend to the operation of any motor vehicle in connection with the rendering of any such services.
Nothing herein shall be deemed to grant any such immunity to any person causing damage by his willful or wanton act of commission or omission.[1]
After adoption of the TCA in 1972, the Legislature adopted N.J.S.A. 2A:53A-13.1 which gave any "volunteer first aid, rescue or emergency squad" and "volunteer fire company" the same immunity as their members. L. 1975, c. 196, § 1, as amended by L. 1983, c. 29, § 2, to parallel the 1983 amendment to N.J.S.A. 2A:53A-13.
In 1976, we held that a local rescue squad was subject to the TCA, and that a complaint had to be dismissed because no timely notice was given under that Act. Matter of Roy, 142 N.J.Super. 594, 599-601, 362 A.2d 589 (App.Div.), certif. denied, In re Roy, 71 N.J. 504, 366 A.2d 660 (1976). No reference was made to N.J.S.A. 2A:53A-12. Three years later, in D'Eustachio v. City of Beverly, 177 N.J.Super. 566, 427 A.2d 126 (Law Div.1979), the Law Division held that voluntary fire departments were "public entities within the meaning of N.J.S.A. 59:1-3," id. at 573, 427 A.2d 126, and that "[a]fter the effective date of the Tort Claims Act, any volunteer firemen ... could claim the immunity provided by N.J.S.A. 2A:53A-13 through and under the Tort Claims Act." D'Eustachio v. City of Beverly, supra, 177 N.J.Super. at 573-74, 427 A.2d 126. In denying summary judgment, given the facts alleged, Judge Wells added:
However, the court does not rely entirely on the status of volunteer firemen as public employees and respondeat superior to make liable the fire companies themselves. Three years after the act the Legislature adopted N.J.S.A. 2A:53A-13.1 which, in language virtually identical to N.J.S.A. 2A:53A-13, specifically provided volunteer fire companies an immunity of the same limited nature and scope as had formerly applied only to volunteers. This provision must be read as one of the immunities protected by and through the act, N.J.S.A. 59:2-1(b), even though it was enacted after the act. Clearly, the Legislature did not bind itself to a fixed immunity-liability balance when it adopted the Tort Claims Act. It may from time to time adjust that balance as public policy and the public interest dictate, and this court has no difficulty in interpreting N.J.S.A. 59:2-1(b) as including a specific immunity enacted after the act. Cf. Trimblett v. State, 156 N.J.Super. 291, 383 A.2d 1146 (App.Div.1977); Diodato v. Camden Cty. Park Comm., 162 N.J.Super. 275, 392 A.2d 665 (Law Div.1978). Lest there be any doubt, the court once again states its opinion that N.J.S.A. 2A:53A-13.1[] immunizes simple negligence at the situs of an emergency or bona fide suspected emergency and that a fire drill is not an emergency.
Thus the court holds that the limited immunity conferred by N.J.S.A. 2A:53[A]-13 and 13.1 is preserved and *80 implemented through the act, in case of volunteers through N.J.S.A. 59:3-1(b) and, in the case of companies through N.J.S.A. 59:2-1(b), but, under the facts here, no emergency existed under either N.J.S.A. 2A:53[A]-13 and 13.1 and accordingly the motion for dismissal must be denied.
[Id. at 574-75, 427 A.2d 126.][2]
Because N.J.S.A. 2A:53A-12, -13 and -13.1 were not amended in any relevant way since these cases were decided, and as the statutes refer to rescue squads as well as voluntary fire companies and their members, we must apply the holdings in the volunteer fire company cases to the volunteer Spotswood First Aid Squad. See Quaremba v. Allan, 67 N.J. 1, 14-15, 334 A.2d 321 (1975). As we recently said, in holding that the immunity of N.J.S.A. 2A:53A-13.1 applies to a fire fighting company "while it is performing first-aid services,"
[b]oth N.J.S.A. 2A:53A-13 and 2A:53A-13.1 apply, by their terms, to both "services for the control and extinguishment of fires" and "emergency public first-aid and rescue services." Here, the defendants were engaged in the latter, but the grant of immunity is as clear and as broad as if they were engaged in fire fighting duties.
[Stollenwerk v. Township of Mullica, 316 N.J.Super. 379, 382, 720 A.2d 422 (App.Div.1998).]
See also O'Connell v. State, 171 N.J. 484, 499, 795 A.2d 857 (2002), to the effect that "the TCA contemplates that its provisions will operate simultaneously with other common law and statutory immunities in a proper case" and holding the Charitable Immunity Act applied to public as well as private educational institutions.
In light of our disposition, we need not decide whether N.J.S.A. 2A:62A-1 grants independent immunity in the case. Defendants do not rely upon it. That statute immunizes "any acts or omissions... in rendering the emergency care" "while transporting the victim [of an emergency]... to a hospital." (emphasis added.)
N.J.S.A. 2A:53A-12, -13 and -13.1 except from their broad immunity injuries which occur "in the operation of any motor vehicle in connection" with the enumerated services. However, because these entities and their members are also protected by the TCA, we must conclude that the TCA *81 threshold must be satisfied to bring an action under the exception to N.J.S.A. 2A:53A-12, -13 and -13.1 relating to an accident involving a motor vehicle. Accordingly, the judgment under review is affirmed.
NOTES
[1] The underscored language was added by L. 1968, c. 44, § 2. A 1983 amendment added the immunity for participation in authorized drills. L. 1983, c. 29, § 1.
[2] Judge Wells also referred to other statutes which support his conclusion that the TCA applied, stating:

[V]irtually every statutory reference concerning volunteer companies refers to fire protection as a governmental function. See e.g., N.J.S.A. 40A:14-68 wherein the expression "governmental function" is actually used. Municipalities must provide worker's compensation for volunteer firemen, and the statute so requiring, N.J.S.A. 34:15-43, describes the work as "public fire duty." Compensation coverage is even required during an "authorized public drill." Id. The very fact that municipalities are authorized to and do contribute money and/or equipment raised or paid for out of tax revenues to volunteer companies under N.J.S.A. 40A:14-33, 34 and 35 strongly suggests the existence and importance of the public function volunteer fire companies perform. Indeed, one case held that a township was permitted to condemn land and lease it rent-free to its volunteer fire company as a valid public purpose under the condemnation statute.
[D'Eustachio v. City of Beverly, supra, 177 N.J.Super. at 572, 427 A.2d 126.]
Similar statutes apply to first aid and rescue squads. See N.J.S.A. 34:15-43 (workers' compensation for "volunteer, first aid or rescue squad workers"); N.J.S.A. 40:5-2 (authorizing municipal contributions to the costs of the squad). Spotswood Township provides the members of the defendant squad with workers' compensation, contributes about $30,000-$31,000 a year to the squad, and provides the squad's facilities under a lease for $1.00 a year.