845 A.2d 1271 (2004)
368 N.J. Super. 320
Leroy LAUDER, Administrator of the Estate of Charles E. Lauder, deceased, and Administrator ad Prosequendum for the Heirs at Law of Charles S. Lauder, deceased, Leroy Lauder, Individually, and Ivy Lauder, Individually, Plaintiffs-Appellants,
v.
TEANECK VOLUNTEER AMBULANCE CORPS, and John Doe and Mary Doe (latter names being fictitious and unknown), Holy Name Hospital and James Roe and Helen Roe, (latter names being fictitious and unknown) and Ferno, a Division of Ferno-Washington, Inc., Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued January 21, 2004.
Decided April 19, 2004.
*1273 Lawrence Stern argued the cause for appellants (Liebowitz, Liebowitz & Stern, attorneys; William C. Rindone, Jr., of counsel and on the brief).
Michael J. Reamer argued the cause for respondent Teaneck Volunteer Ambulance Corps. (Law Offices of Richard M. Braslow, Toms River, attorneys; Mr. Braslow, on the brief).
John T. Sullivan argued the cause for respondent Ferno, a division of Ferno-Washington, Inc. (Lamb, Hartung, Kretzer, Reinman & DePascale, attorneys; Mr. Sullivan, on the brief).
Robert J. Logan argued the cause for respondent Holy Name Hospital (Hein, Smith, Berezin, Maloof & Jacobs, attorneys; Mr. Logan, on the brief).
Before Judges PRESSLER, PARKER and R.B. COLEMAN.
*1272 The opinion of the court was delivered by PARKER, J.A.D.
Plaintiffs appeal from orders dismissing the complaint against each of the three defendants, Teaneck Volunteer Ambulance Corps (ambulance squad), Holy Name Hospital (Hospital) and Ferno-Washington, Inc. We affirm the dismissals of the claims against the ambulance squad and Ferno-Washington and reverse the dismissal of the complaint against the Hospital.
The basic facts giving rise to this cause of action are not in dispute. On April 2, 1998, the ambulance squad transported eighty-year-old Charles Lauder to Holy Name Hospital because he was having difficulty breathing and was experiencing a "reduced level of consciousness." Brian Martin, a paramedic employed by the Hospital, was in the ambulance and attending to Lauder, who was strapped to a gurney. To facilitate Lauder's breathing during the transport, the paramedic removed the chest strap to place Lauder in a sitting position. The leg and lap straps remained fastened. Neither Martin nor anyone else refastened the chest strap and when Lauder was being removed from the ambulance, the undercarriage of the gurney collapsed, causing Lauder to fall and hit his head on the pavement.[1] Lauder died several days later from the injuries sustained in the fall.
Prior to trial, the ambulance squad and its members were granted summary judgment under N.J.S.A. 2A:53A-13, which provides immunity for members of volunteer first aid and rescue squads, and N.J.S.A. 2A:53A-13.1, which provides immunity for volunteer first aid or rescue squads.
The Hospital acknowledged that its employee, Martin, responded to plaintiff's home on April 2, 1998, and that he attended to plaintiff during transport to the Hospital. The Hospital claims, however, that the ambulance squad was responsible for moving plaintiff, and the squad members were responsible for checking the chest straps and folding legs on the stretcher to be certain they were in place. The Hospital claims that it was the ambulance squad members who lost control of the stretcher, causing plaintiff to fall and strike his head on the pavement.
On the day trial was scheduled to begin, the Hospital moved to dismiss on the grounds that plaintiffs had no expert on the proper conduct of either paramedics or ambulance personnel and had produced no evidence suggesting that Lauder's injuries *1274 would have been less severe if the chest strap had been fastened. The motion was granted.
On the same day, Ferno-Washington moved in limine, arguing that plaintiffs failed to provide an expert report indicating that there was a manufacturing or design defect and that plaintiffs could not proceed on a product liability claim without expert testimony. Ferno-Washington's motion was granted dismissing the complaint against it, as well. In this appeal, plaintiffs argue that the trial court was arbitrary, capricious and unreasonable in dismissing the claims against each of the defendants.

I
Plaintiffs contend that the ambulance squad is not a public entity as defined under the Tort Claims Act and should not be entitled to immunities. Independent of the Tort Claims Act, however, N.J.S.A. 2A:53A-13 and -13.1 specifically provide immunity to volunteer ambulance squads and their members from "damages as a result of any acts of commission or omission arising out of and in the course of the rendition in good faith of any such services.... No such immunity from liability shall extend to the operation of any motor vehicle in connection with the rendering of any such services." N.J.S.A. 2A:53A-13.
The ambulance squad responds that it is a public entity entitled to the defenses and immunities of the Tort Claims Act by virtue of Pallister v. Spotswood First Aid, 355 N.J.Super. 278, 810 A.2d 77 (App.Div. 2002), in which we reiterated our prior holding in Matter of Roy, 142 N.J.Super. 594, 599-601, 362 A.2d 589 (App.Div.) certif. denied, 71 N.J. 504, 366 A.2d 660 (1976), that volunteer ambulance squads are subject to the Tort Claims Act and that a complaint must be dismissed for lack of timely notice under the Act. Pallister, supra, 355 N.J.Super. at 280-81, 810 A.2d 77. In Pallister, we held that a plaintiff who was injured when the ambulance in which she was being transported was involved in an accident must satisfy substantial injury threshold under the Tort Claims Act. Id. at 283, 810 A.2d 77.
Public entities are "liable [under the Tort Claims Act] for injury proximately caused by an act or omission of a public employee within the scope of his employment in the same manner and to the same extent as a private individual under like circumstances." N.J.S.A. 59:2-2a. The immunities granted to volunteer ambulance squads under N.J.S.A. 2A:53A-13 and -13.1 are broader in scope than those generally provided under the Tort Claims Act because a plaintiff must demonstrate an absence of good faith or intentional conduct. Here, the complaint against the volunteer ambulance squad sounds in negligence and does not allege intentional conduct, nor does plaintiff proffer any evidence of intentional conduct. Accordingly, the volunteer ambulance squad is immune from liability and the grant of summary judgment dismissing the claims against it is affirmed.

II
On the day trial was scheduled to begin, the Hospital moved orally to dismiss the complaint against it on the ground that the Hospital and its employee, Brian Martin, were immune from liability in the rendering of advanced life support under N.J.S.A. 26:2K-14. Before ruling on the motion, the trial judge gave plaintiffs' counsel a day to research the issue and respond. The next day the judge found that the Hospital could only be liable vicariously through the negligent conduct of its employee. The court further found that the paramedic's conduct in releasing Lauder's chest strap to place him in a sitting *1275 position because Lauder was having difficulty breathing, constituted advanced life support, rendering the Hospital immune from liability. N.J.S.A. 26:2K-14.
Plaintiffs initially argue that the motion was procedurally defective because the Hospital failed to file and serve a notice of motion pursuant to R. 4:46-1 and 4:46-2(a) and (b). While pre-trial motions must ordinarily be filed timely with the appropriate supporting documents, R. 4:37-2(b) allows for involuntary dismissal at trial, usually after the close of plaintiff's case. The rule may be employed, however, in the interests of justice and judicial economy when, at the start of trial, plaintiff has insufficient evidence to proceed. See Hearon v. Burdette Tomlin Mem'l Hosp., 213 N.J.Super. 98, 105, 516 A.2d 628 (App.Div.1986). We find no error in the Hospital making the oral motion as trial was about to begin. Our decision here focuses on whether the trial judge granted it prematurely. Ibid.
We next consider the immunities provided under N.J.S.A. 26:2K-14 in comparison to plaintiffs' allegations to determine whether, absent expert testimony, a jury could reasonably have concluded that the paramedic was negligent in failing to refasten the chest strap before Lauder was removed from the ambulance.

N.J.S.A. 26:2K-14 provides:
No mobile intensive care paramedic, licensed physician, hospital or its board of trustees, officers and members of the medical staff, nurses or other employees of the hospital, first aid, ambulance or rescue squad, or officers and members of a rescue squad shall be liable for any civil damages as a result of an act or the omission of an act committed while in training for or in the rendering of advanced life support services in good faith and in accordance with this act.
N.J.S.A. 26:2K-7(a) defines "advanced life support" as:
"Advanced life support" means an advanced level of pre-hospital, inter-hospital, and emergency service care which includes basic life support functions, cardiac monitoring, cardiac defibrillation, telemetered electrocardiography, administration of anti-arrhythmic agents, intravenous therapy, administration of specific medications, drugs and solutions, use of adjunctive ventilation devices, trauma care and other techniques and procedures authorized in writing by the commissioner.
Plaintiffs maintain that Martin did not administer advanced life support services to Lauder during the ambulance ride or, more importantly, while Lauder was being removed from the ambulance. In his deposition, Martin testified:
Q. So essentially though other than assessment of this patient, [no] treatment was actually rendered, correct?
A. Well, treatment was oxygen and putting him in the correct position, putting him in the correct position was a large treatment.
Q. And you provided oxygen?
A. He was provided with oxygen.
Q. That's the full extent of the treatment he received from the time you came on the scene until the time you arrived at the hospital; is that accurate to say?
A. Yes, other than attempting to put an I.V. in him.
Plaintiffs contend that Martin's failure to refasten the chest strap after administering oxygen and before Lauder was removed from the ambulance was simple negligence unrelated to advanced life support. Based upon the record before us, we agree that a jury could so find. There is no evidence to indicate that the paramedic was administering advanced life support *1276 when Lauder was being removed from the ambulance by squad members, or that Lauder's condition upon arrival at the hospital was such that the chest strap could not or should not have been refastened during his removal from the ambulance. De Tarquino v. City of Jersey City, 352 N.J.Super. 450, 456, 800 A.2d 255 (App. Div.2002) (holding that N.J.S.A. 26:2K-29 only immunizes medical personnel for negligence in actually rendering life support services.) Frields v. St. Joseph's Hosp. & Med. Ctr., 305 N.J.Super. 244, 249, 702 A.2d 353 (App.Div.1997) (stating that where a plaintiff can demonstrate that medical personnel "did not act in an objectively reasonable manner," the immunity conferred by N.J.S.A. 26:2K-29 does not apply).
The Hospital responds that, even if the immunity statute does not apply, expert testimony is required for a jury to determine whether refastening the chest strap would have prevented Lauder's injury. We reject that contention under the circumstances presented here. It is undisputed that the gurney bearing Lauder was removed from the ambulance by two members of the squad. A jury could then reasonably infer, without expert testimony, that Martin was not administering advanced life support services to Lauder during his removal from the ambulance, and that Martin could have and should have refastened the chest strap to prevent Lauder from falling sideways off the gurney when it collapsed. A jury could likewise determine, without expert testimony, that Lauder would not have hit his head on the pavement if the chest strap had been fastened when the gurney collapsed. Giving all of the favorable inferences to plaintiffs, as we must, a jury could reasonably conclude that Martin was negligent and that, but for his negligence, Lauder would not have struck his head on the pavement.
In our view, the Hospital's motion to dismiss was granted prematurely. The trial judge should have reserved his decision until after the close of plaintiffs' case, when he would have had the benefit of all of plaintiffs' evidence. The judge would then have been more informed as to whether a jury could reasonably have found in plaintiff's favor. Hearon, supra, 213 N.J.Super. at 104-05, 516 A.2d 628. Accordingly, we reverse the dismissal of plaintiffs' claims against the Hospital and remand for further proceedings in accordance with this opinion.

III
On the day trial was scheduled to begin, Ferno-Washington, the manufacturer of the gurney, moved in limine based on plaintiffs' failure to provide an expert report respecting plaintiffs' claims of manufacturing and design defects which allegedly caused the gurney to collapse. After hearing arguments and allowing a day for plaintiffs to respond, the court granted the motion and dismissed plaintiffs' claims against Ferno-Washington.[2]
Plaintiffs contend that the blanket covering Lauder might have been caught in the locking mechanism and that a jury could find, without expert testimony, that the gurney's design was defective because the locking mechanism did not prevent the blanket from becoming caught. We consider this assertion highly speculative.
First, plaintiffs failed to identify which of the three gurneys in use by the ambulance squad at the time was used to *1277 transport Lauder on the day of the accident. Second, there is nothing in the record before us to indicate that the gurney was defective. The mere fact that the legs collapsed does not prove that "the product causing the harm was not reasonably fit, suitable or safe for its intended purpose." N.J.S.A. 2A:58C-2. "Although a plaintiff is relieved from proving fault [under the Product Liability Act,] that plaintiff must nonetheless prove that the product was defective under the common law jurisprudence that was incorporated into the Act." Myrlak v. Port Authority, 157 N.J. 84, 97, 723 A.2d 45 (1999).
Based on our well-established case law in this area, a plaintiff must prove that the product was defective, that the defect existed when the product left the manufacturer's control, and that the defect proximately caused injuries to the plaintiff, a reasonably foreseeable or intended user.
[Ibid.]
To prove the existence of a defect, a plaintiff may rely on the testimony of an expert who has examined the product or offers an opinion on the product's design. Scanlon v. General Motors Corp., 65 N.J. 582, 591, 326 A.2d 673 (1974). Alternatively, a plaintiff may produce circumstantial evidence of a defect, "such as proof of proper use, handling or operation of the product and the nature of the malfunction, [which] may be enough to satisfy the requirement that something is wrong with [the product]." Ibid. The res ipsa loquitur doctrine is not available to product liability plaintiffs, however. Ibid.
Moreover, where the allegedly defective product involves a complex instrumentality, a plaintiff is required to provide expert testimony. Rocco v. NJ Transit Rail Operations, 330 N.J.Super. 320, 341, 749 A.2d 868 (App.Div.2000). Expert testimony is necessary to assist the fact finder in understanding "the mechanical intricacies of the instrumentality" and in excluding other possible causes of the accident. Jimenez v. GNOC Corp., 286 N.J.Super. 533, 546, 670 A.2d 24 (App.Div.), certif. denied, 145 N.J. 374, 678 A.2d 714 (1996). In Rocco, plaintiff was injured when his hand was jammed in a railroad car's sliding doors and the emergency unlocking mechanism failed to open the doors. Rocco, supra, 330 N.J.Super. at 330, 749 A.2d 868. Plaintiff did not produce an expert report. Id. at 341, 749 A.2d 868. We determined that the locking mechanism was a complex instrumentality requiring expert testimony and affirmed the trial court's dismissal of plaintiff's product liability claims against the manufacturer. Id. at 341-44, 749 A.2d 868.
Similarly, in Sparrow v. La Cachet, Inc., 305 N.J.Super. 301, 702 A.2d 503 (App.Div. 1997), we affirmed the trial court's dismissal of plaintiff's product liability claim for failure to produce an expert report. There, plaintiff suffered burns to her face and neck while using a facial machine. Id. at 303, 702 A.2d 503. We held that the mechanical intricacies and design criteria of the appliance required expert testimony in order to prove the existence of a design defect. Id. at 304-05, 702 A.2d 503. In our view, the locking mechanism of the gurney is sufficiently complex to require expert testimony.
The occurrence of an accident and the fact that someone was injured are not sufficient to demonstrate a defect. Scanlon, supra, 65 N.J. at 591, 326 A.2d 673. Plaintiffs must also prove that the defect was in existence while the product was in the control of the manufacturer. Ibid. There is no such evidence in the record before us. Plaintiffs must "negat[e] other causes of the failure of the product for which the defendant would not be responsible, in order to make it reasonable *1278 to infer that a dangerous condition existed at the time the [manufacturer] had control of the product." Myrlak, supra, 157 N.J. at 99, 723 A.2d 45.
It appears that the gurney could have collapsed for a number of reasons unrelated to a design or manufacturing defect, e.g., the legs were not securely locked, extraneous material, such as a blanket, could have been caught in the legs preventing them from locking (not necessarily a defect in the gurney), or the gurney may not have been properly maintained. Without expert testimony, a jury can only speculate as to the cause of the gurney's collapse and cannot reasonably be expected to determine whether the gurney was defective when it was in the possession and control of Ferno-Washington. We affirm the trial court's dismissal of the complaint against Ferno-Washington.

CONCLUSION
The dismissal of claims against the volunteer ambulance squad and Ferno-Washington are affirmed. The dismissal of the complaint against the Hospital is reversed and remanded for further proceedings in accordance with this opinion.
NOTES
[1] Defendant Ferno-Washington manufactured the gurney.
[2] Plaintiffs make the same procedural argument with respect to the timeliness of Ferno-Washington's motion as it does with the Hospital. Here we conclude that there was no error in granting the motion before plaintiffs presented their case. See Hearon, supra, 213 N.J.Super. at 105, 516 A.2d 628.