MENYUK, J.T.C.
This matter comes before the court following the denial without prejudice of plaintiff’s motion for partial summary judgment. The motion sought to invalidate certain assessments of taxes for periods prior to June 1, 1998 on the ground that the assessments were made beyond the periods permitted by the relevant statutes of limitations for the assessment of tax deficiencies by the Division of Taxation (“Division”). It was plaintiff’s contention that consents signed by plaintiff’s former accountant waiving the statutes of limitation were invalid because the plaintiff had not delegated such authority to its accountant in a power of attorney executed by plaintiffs principal. For the reasons set forth in a letter opinion dated August 6, 2004 I found that there was a material issue of fact as to the scope of authority granted to the accountant. I directed a hearing on the scope of the authority granted by plaintiff to its accountant in connection with the Division’s audit of its business and on the reasonableness of the Division’s reliance on the power of attorney.
When the motion was originally heard, I also found that there was a factual issue as to when the tax returns had been filed and when, therefore, the statute of limitations for the making of the assessments had actually run. See, e.g., N.J.S.A. 54:49-6 b and N.J.S.A. 54:32B-27(b), both applicable to the Sales and Use Tax, and both permitting additional assessments to be made within four years from the date of the filing of a return. The Division has since submitted copies of the sales tax returns to the court, and the plaintiff does not dispute the dates on which the Division indicates that those returns were filed.[1] The sales tax assess *387 ments which plaintiff seeks to invalidate, together with the dates on which the returns were filed and the dates on which the statute of limitations for making assessments would have expired pursuant to N.J.S.A. 54:49-6(b) and N.J.S.A. 54:32B-27(b), in the absence of a valid consent to waive the statute of limitations, are:
Amount of Statute of Assessment Limitations (Excluding Tax Tax Period Date Return Filed Expiration Date and Penalties)
6/1/96 through 10/20/96 10/20/00 $5689.22 9/30/96
10/1/96 through 5/7/97 5/7/01 $5689.22 12/31/96
1/1/97 through 4/18/97 4/18/01 $5689.22 3/31/97
4/1/97 through 7/15/97 7/15/01 $5689.22 6/31/97
7/1/97 through 10/16/97 10/16/01 $5689.22 9/30/97
10/1/97 through 1/18/98 1/18/02 $5689.22 12/31/97
1/1/98 through 4/10/98 4/10/02 $5689.22 3/31/98
4/1/98 through 7/12/98 7/12/02 $5689.22 6/30/98
It is undisputed that the Division assessed the taxes in issue on June 25, 2002. Accordingly, if plaintiff prevails on this motion, only assessments of sales tax covering the periods through March 31, 1998 and not through June 1, 1998 will be invalid, since the running of the period in which assessments can be made by the Division is determined by the date on which the return was filed. The return for the period including June 1, 1998 was filed on July 12, 1998 and the four year period for making an assessment expired on July 12, 2002. The assessment for that period was therefore made within the period permitted by the statute.
After considering and weighing the testimony at the hearing, as well as the certification of plaintiffs principal originally submitted in support of the summary judgment motion, I now conclude that:
*388 (1) the power of attorney signed on behalf of the corporate plaintiff expressly authorized its accountant to consent to any extension of time in which to make assessments; (2) the Division reasonably relied upon that power of attorney; (3) even if the power of authority document was defective, the accountant had the apparent authority to waive the statute of limitations; and (4) the consents executed by the plaintiffs accountant were valid waivers of the time period within which the Division would otherwise have been required to make the assessments for periods prior to June 1,1998.
Vincenzo Carollo is the sole shareowner and president of the plaintiff corporation. Through the corporation, Mr. Carollo has operated a restaurant in Marlton, New Jersey known as Corallo’s for the past ten years. Mr. Carollo is 56 years old and is a citizen of this country who was born in Sicily and immigrated to the United States in 1970. He has a fifth grade education and can speak and understand English. He can read and write only a little English. He has, however, run a successful business for the last ten years, and has obtained bank loans for the business. He testified that, with help, he was able to understand the terms of any loan documents that he was required to sign.
The Division’s auditor testified that the audit that is in issue in this action commenced in July 2000, when she had an initial contact letter sent to the plaintiff, advising that the Division of Taxation was about to conduct an audit of the business. According to the auditor, the initial letter enclosed the Division’s standard form of power of attorney and advised the taxpayer that the form should be completed and returned if the taxpayer wished to be represented by someone else during the audit. She further testified that, after the letter was sent out, she was contacted by Anthony DelVecehio, who represented to her that he was plaintiffs accountant.
Mr. Carollo testified that, at the time of the audit, Anthony DelVecehio was plaintiffs accountant. It appears that Mr. Del-Vecchio had been plaintiffs accountant for approximately two years prior to the commencement of the audit. At the hearing, *389 Mr. Carollo denied that he knew at the time that plaintiff was being audited, and maintained that it was Mr. DelVecchio who told him about the audit. This testimony directly contradicted his certification submitted in support of the summary judgment motion, which stated, “[sjometime in late 1999 or early 2000 I was notified by the New Jersey Division of Taxation that my business was to be audited. I gave this information to Mr. DelVecchio and he handled all matters with the auditor from that point forward.” Mr. Carollo also testified that Mr. DelVecchio had never explained anything to him about the audit, and more specifically, that Mr. DelVecchio had never explained to him the effect of a consent to waive the statute of limitations.
Mr. DelVecchio’s deposition testimony[2] was that Mr. Carollo had contacted him about the audit. Mr. DelVecchio had no recollection as to whether Mr. Carollo specifically asked him to represent the plaintiff during the audit. He testified, however, that he has frequently represented clients, including restaurant clients, in audits by the Division, and that his usual approach would be to tell the client that if the client wanted him there for the audit, the client would have to sign a power of attorney authorizing him to handle it.
It is not clear whether the power of attorney form returned to the Division by Mr. DelVecchio was a form that Mr. DelVecchio had retained from previous dealings with the Division or whether it was the form that had been enclosed with the initial letter notifying the plaintiff that an audit was to take place. Mr. DelVecchio testified that he filled in the blank power of attorney with the name of the plaintiff, the plaintiffs taxpayer identification number and his own name. He stated that, typically, he would fill in the years covered by the audit, but conceded that he had not done so .in this case. Mr. DelVecchio testified that he was not present when Mr. Carollo signed it. Mr. Carollo testified that he did not recall signing the form but acknowledged that it was his signature that appeared on the power of attorney. Again, his *390 testimony contradicted Ms certification submitted in support of the motion for summary judgment, wMch stated, “[the power of attorney form] contains my signature. The form was prepared by Mr. DelVecchio. I did understand that this was a form that Mr. DelVeccMo was going to present to the tax auditor.” I find that Mr. Carollo signed the power of attorney form and understood that the form was to be given to the Division of Taxation in connection with the audit. According to Mr. DelVeccMo, Mr. Carollo returned the form to Mm and he faxed it back to the auditor. The form was stamped “received” by the Division with a date wMch appears to be July 28, 2000.
The power of attorney form received by the Division appeared as follows:
I Cwllos [sic], Inc. [tax identification number] hereby appoint Anthony F. DelVecchio [address and telephone number] as attorney-in-fact to represent me before any office and/or representative of the Division of Taxation, State of New Jersey with respect to any audit functions and/or proceedings for the year(s) or period(s):
[Two preprinted lines appear on the form, which are blank]
Said attorney-in-fact shall, subject to revocation in writing, have authority to receive confidential information and full power to perform on behalf of the taxpayer(s): All acts necessary and requisite to facilitate said audit functions and/or audit proceedings; to execute waiver (including offers of waivers) of restrictions on assessments or collection of deficiencies in tax and waivers of notice of disallowance of a claim for a credit or refund; to executive [sic] consents extending the statutory period for assessments or collection of taxes; to delegate authority or to substitute another representative of the same firm or company. Other acts (specify) [followed by two preprinted lines which are blank]
Copies of notices and other written communications addressed to the taxpayer(s) in proceedings involving the above matters should be sent to:
[three preprinted lines which are blank]
This power of attorney revokes all prior powers of attorney and tax information authorizations on file with the same Division of Taxation office with respect to the same matters and years or periods covered by this assessment.
[Emphasis added].
Mr. DelVeccMo testified that he was sure he had not explained the effect of the power of attorney form to Mr. Carollo, and that he would not typically explain that form to Ms clients. He stated that he had probably said to Mr. Carollo that he (DelVecchio) was going to be the lead person on the audit and that he couldn’t represent Mm in the audit without the signed power of attorney. *391 Although he had no specific recollection, Mr. DelVecchio testified that he would have explained to Mr. Carollo that the audit period should only cover four years, presumably based on the four year statute of limitation for assessing sales tax, which was the most significant tax assessment involved in this action. See N.J.S.A 54:32B-27(b) and N.J.S.A. 54:49-6 b, both providing for a four year statute of limitations for assessments of additional tax. It was Mr. DelVecchio’s understanding that he represented the plaintiff in the audit for all of the years under review in the audit.
I find from the testimony of the auditor, the deposition testimony of Mr. DelVecchio and the certification of Mr. Carollo that it was Mr. Carollo who was informed of the impending audit by the Division, and that he contacted Mr. DelVecchio to represent the plaintiff in connection with the audit. I also find that Mr. DelVee-chio did not explain to Mr. Carollo the legal effect of the form, except that he did inform Mr. Carollo that the Division required the form to be signed by Mr. Carollo in order for Mr. DelVecchio to represent the plaintiff in connection with the Division’s audit.
The auditor, Constance Mester, testified that it was her understanding that, if no dates were indicated on the power of attorney, as was the case here, the person representing the taxpayer had no restrictions in terms of the time period covered by the power of attorney. She further testified that she had not been trained to reject power of attorney forms that did not have the dates filled in. She stated that, in her experience,[3] the taxpayer’s representative may not fill in the dates on the power of attorney form because at the time the form is completed at the very beginning of the audit, neither the taxpayer nor the representative may be certain of the periods to be audited. She conceded, however, that she could have directed Mr. DelVecchio to obtain a new power of attorney with the dates filled in.
Shortly after the audit had begun, Mr. DelVecchio signed a form entitled “Consent Fixing Period of Limitation Upon Assess *392 ment of New Jersey Taxes.” Mr. DelVecchio dated the form September 10, 2000. The form states that Corallo’s Inc. consents and agrees that the amount of any taxes due under any returns made by or on behalf of the taxpayer for the periods listed and under the specified tax acts may be assessed at any time on or before December 31, 2001. The following taxes and periods were listed:
Sales and Use Tax Act 07/01/96 to 06/30/00
Corporation Business Tax Act 01/01/96 to 12/31/99 Gross Income Tax 01/01/97 to 12/31/99
Litter Control Tax 01/01/96 to 12/31/99
The form goes on to state that the consent may be signed by an attorney or agent of the taxpayer provided such action is specifically authorized by a power of attorney which, if not previously filed, must accompany the consent form. On November 13, 2001, Mr. DelVecchio again signed a substantially similar form extending the time in which to assess taxes until June 30, 2002. The same taxes and periods were listed.
Mr. DelVecchio had no specific recollection of signing the forms. He stated that the form is a standard form used by the Division and that he frequently signs such forms for clients that he is representing in an audit. He signed the consents in this case because he believed there was “still a chance” to do some work on behalf of the plaintiff, that is, to reduce the plaintiffs potential tax liability.
Mr. DelVecchio was certain that he had not explained the consent form to Mr. Carollo. In Mr. DelVecchio’s view, his clients hire him to represent them and he does his best to represent their best interests, which is what he believed he was doing in this case when he signed the consent forms. It was Mr. DelVecchio’s opinion that some information had either not been considered or had not been sufficiently considered by the auditor in reaching her preliminary findings, and he had still hoped to reach some accommodation with the Division on behalf of plaintiff.
The auditor testified that, in October 2000, she and Mr. DelVec-chio went together to plaintiffs restaurant. At that time, Mr. *393 DelVecchio introduced her to Mr. Carollo. Although plaintiffs brief attempts to cast doubt on whether this meeting ever occurred, Mr. Carollo testified that he recalled meeting the auditor. Mr. DelVecchio’s testimony also confirmed that the meeting took place: “I believe we took a tour of the facility, so he [Mr. Carollo] was there just for an intro, to meet the auditor.”
The auditor testified that, during her visit to the restaurant, she reviewed the pre-audit questionnaire with Mr. DelVecchio and Mr. Carollo, asking such questions as how many pizzas plaintiff sold in a day, and other questions regarding the menu, such as ingredients in the dishes listed, portion sizes and so forth. She also questioned them about suppliers and the restaurant’s hours of operation. She testified that Mr. Carollo appeared to understand her questions. She testified that during the visit she directed her questions to Mr. DelVecchio, and that Mr. Carollo gave her no reason to doubt Mr. DelVecchio’s authority to act for the plaintiff in connection with the audit. Similarly, Mr. DelVecchio testified that at no time during the audit did Mr. Carollo direct him to cease representing the plaintiff. Notably, Mr. DelVecchio continued to do monthly accounting work for the plaintiff until 2003, well past June 25, 2002, when the Division made its assessment against the plaintiff.
Following the meeting at the restaurant, the audit proceeded with Mr. DelVecchio supplying the auditor with additional infoi’-mation from time to time. At some point in the summer of 2001, the auditor attempted to contact Mr. DelVecchio sevei'al times without success. She testified that she attempted to reach him by telephone and in person, by dropping by his office on a few occasions. In November 2001, shortly before the first waiver of the statute of limitations was due to expire on December 31, 2001, she spoke with Mr. DelVecchio’s receptionist, who told her that Mr. DelVecchio might not be representing the plaintiff any longer. The auditor testified that she called Mr. Carollo and asked him if Mr. DelVecchio was still representing plaintiff. At the hearing, Mr. Carollo testified that he did not recall the telephone conversation. The auditor testified that Mr. Carollo told her that as far as he knew, Mr. DelVecchio continued to represent the plaintiff. The *394 auditor advised Mr. Carollo that she had been having difficulty contacting Mr. DelVecchio. She spoke with Mr. DelVecchio shortly after her contact with Mr. Carollo, and Mr. DelVecchio signed the second consent to waive the statute of limitations on November 13, 2001.
I find the testimony of the auditor regarding the telephone call with Mr. Carollo to be credible. The auditor identified a document called a case history into which she had contemporaneously entered the various contacts with Mr. Carollo, Mr. DelVecchio and other persons in connection with the audit. The case history noted a conversation with Mr. Carollo on November 5, 2001 and described the substance of the conversation consistent with the auditor’s testimony. I find that the auditor had a telephone conversation with Mr. Carollo in November 2001, and that Mr. Carollo told her at that time that Mr. DelVecchio continued to represent plaintiff in connection with the audit.
The Division sent a notice of assessment related to final audit determination by letter dated June 25, 2002, five days before the last consent to an extension of time to make the assessments was due to expire. The audit determination was timely protested by the plaintiff pursuant to N.J.S.A. 54:49-18. Some adjustments were made as a consequence of the conference hearing, and the Division issued a final determination on October 28, 2003. A timely appeal of the final determination was filed with this court on December 22, 2003.
It is plaintiffs contention that Mr. Carollo did not authorize Mr. DelVecchio to waive the statute of limitations, and that any reliance that the Division of Taxation may have placed on the power of attorney form was unreasonable. Plaintiff emphasizes the following deficiencies in the power of attorney form returned by Mr. DelVecchio to the Division: the misspelling of the plaintiffs name; its failure to identify the tax years or periods for which the attorney-in-fact was being appointed; the lack of any title next to Mr. Carollo’s signature, as well as the lack of a date next to his name. Plaintiff also notes that there is a typographical error in the body of the Division’s preprinted power of attorney *395 form, namely, it authorizes the attorney-in-fact to “executive” rather than “execute” consents extending the statutory period in which to make assessments. The plaintiff also points to the auditor’s case history, which recounts frequent unsuccessful attempts by the auditor to contact Mr. DelVecchio, as evidence that the Division could not reasonably have relied on Mr. DelVecchio for anything.
According to the Division, it uses the standard power of attorney form utilized here when a taxpayer wishes to have an agent represent him in tax proceedings. Written authorization from the taxpayer is required by N.J.S.A. 54:50-2.1, which provides:
When an examination of the books, records, papers, vouchers or accounts of a taxpayer is conducted on the premises of an agent of the taxpayer by the Director of the Division of Taxation or by any employee thereof, the taxpayer shall provide such agent evidence in writing that the agent is authorized to act in behalf of the taxpayer in making any application, deposition, statement, or report required by the director in the administration of any tax law, and the agent shall produce such authorization to the representative of the Division of Taxation.
See also, N.J.S.A. 54:50-8 (pertaining to the confidentiality of tax records), and N.J.S.A 54:50-9(a) (providing that, notwithstanding the provisions of N.J.S.A. 54:50-8, the Division may give a copy of any paper filed by the taxpayer to the taxpayer’s duly authorized representative).
The Legislature did not require that any particular form be used in connection with the authorization called for by N.J.S.A. 54:50-2.1, or direct that the authorization be executed with any degree of formality. Compare N.J.S.A 54:50-2.1, with N.J.S.A. 46:2B-8.9, a section of the Revised Durable Power of Attorney Act, which provides that a power of attorney must be in writing, duly signed and formally acknowledged. The evident intent of N.J.S.A 54:50-2.1 is to permit the Division to deal with an accountant or attorney and to rely on that representative to the same extent as it would rely on the taxpayer itself, without having to go back to the taxpayer for ratification of each act. The use of a representative in a tax proceeding such as an audit would appear to be a convenience for both the taxpayer, who is not required to be present at the examination of books and records maintained by his or her representative, and also for the Division, whose auditor *396 can examine the taxpayer’s books and records at a single location and deal with a single person who is familiar with them. Whether to appoint such an agent, however, is solely at the taxpayer’s election. The purpose of N.J.S.A. 54:50-2.1 is to provide the Division with some assurance that the agent speaks for the taxpayer. The taxpayer’s alternative to providing the authorization required by N.J.S.A. 54:50-2.1 is that the taxpayer must be personally present at the examination of the books and records.
In this case, the Division contacted plaintiff by letter and advised that the Division was going to audit plaintiffs business. It was Mr. Carollo and not the Division who contacted Mr. DelVecchio to handle the audit. Mr. Carollo’s certification and the testimony of Mr. DelVecchio establish that it was at the behest of Mr. Carollo that Mr. DelVecchio filled out the power of attorney form for Mr. Carollo’s signature and returned the signed power of attorney to the Division.
A power of attorney is an “instrument in writing whereby one person, as principal, appoints another as his [or her] agent and confers authority to perform certain specified acts or kinds of aets on behalf of the principal.” [S]ee also N.J.S.A 46:2B-8.2(a) (defining power of attorney as “written instrument by which an individual known as the principal authorizes another individual ... known as the attorney-in-fact to perform specified acts on behalf of the principal as the principal’s agent.”).
[D.D.B. Interior Contracting Inc. v. Trends Urban Renewal Association, Ltd., 176 N.J. 164, 168, 821 A.2d 1135 (2003) (citations omitted).]
Mr. Carollo signed the power of attorney form. That form expressly authorized Mr. DelVecchio to sign consents to waive the statute of limitations for the making of assessments. That Mr. DelVecchio did not explain the power of attorney document to Mr. Carollo or tell Mr. Carollo that he had signed the consents to waive the statute of limitations is not relevant here. “The primary purpose of a power of attorney is not to define the authority of the agent as between himself and his principal, but to evidence the authority of the agent to third parties with whom the agent deals.” Bank of America Nat’l Trust and Savings Ass’n v. Horowytz, 104 N.J.Super. 35, 38, 248 A.2d 446 (Bergen County Ct.1968); citing 3 Am.Jur.2d, Agency, § 23, p. 433, see also, Kisselbach v. Camden County, 271 N.J.Super. 558, 564, 638 A.2d 1383 (App.Div.1994) (to *397 the same effect, quoting Bank of America Nat’l Trust Savings Ass’n, supra, 104 N.J.Super, at 38, 248 A.2d 446).
It appears that plaintiff believes that the Division of Taxation had some obligation to ensure or guarantee that he understood the form. Plaintiff misunderstands the nature of the document. Mr. Carollo chose Mr. DelVecchio to represent him at the audit and had entrusted him with his tax matters for some time before and after the audit. Mr. Carollo is a knowledgeable businessman who, in the past, has had documents explained to him when his command of written English was inadequate. Quite simply, Mr. Carollo should not have signed a form that he did not understand. The Division has no duty to ascertain whether a taxpayer has obtained adequate independent advice before appointing someone to represent the taxpayer during an audit.
Plaintiff has pointed to several defects in the power of attorney document returned to the Division. I conclude that these defects did not make it unreasonable for the Division to rely on the document. Mr. Carollo could have, but did not, limit the time period covered by the power of attorney. Alternatively, he could have refused to sign the form until he received clarification as to the years under audit. Similarly, Mr. Carollo could have or should have obtained clarification regarding the typographical error in the form before signing it. That Mr. Carollo did not fill in his title or date the form is also not a reason for the Division to reject the power of attorney form. Mr. Carollo’s identity was already known to the Division, as evidenced by the sales tax returns that had been signed by him as plaintiffs president. The Division also knew when plaintiff had been notified of the pending audit and knew that the document had been promptly returned to it.
Even if the auditor should have insisted on having the power of attorney form document dated, and the tax years in issue filled in, I conclude that Mr. DelVecchio had the apparent authority to sign the consent to an extension of time within which to make the assessments. See e.g., Mercer v. Weyerhaeuser Co., 324 N.J.Super. 290, 318, 735 A.2d 576 (App.Div.1999) (factual question *398 is whether the principal has voluntarily placed the agent in a situation such that a person of ordinary prudence and familiar with the practices of a business is justified in presuming that the agent has the authority to perform the particular act). “Apparent authority imposes liability on the principal not as a result of an actual contractual relationship, but because the principal’s actions have misled a third-party into believing that a relationship of authority in fact exists.” Kuhn v. Tumminelli, 366 N.J.Super. 431, 445, 841 A.2d 496 (App.Div.2004), quoting Mercer v. Weyerhaeuser Co., supra, 324 N.J.Super. at 317, 735 A.2d 576. A party seeking to rely on the apparent authority of a putative agent must establish:
(1) that the appearance of authority has been created by the conduct of the alleged principal and it cannot be established “alone and solely by proof of [conduct by] the supposed agent;” (2) that a third party has relied on the agent’s apparent authority to act for a principal; and (3) that the reliance was reasonable under the circumstances.
[Id. at 318, 735 A.2d 576 (citations omitted) ]
The defendant has met its burden of establishing that Mr. DelVecchio had apparent authority to act for the plaintiff: the power of attorney was signed by Mr. Carollo on behalf of the corporation; Mr. DelVecchio was in possession of the plaintiff’s books and records when the auditor went to his office to examine them and continued to obtain information regarding the plaintiff throughout the audit; Mr. Carollo was present when the auditor and Mr. DelVecchio visited the restaurant in October 2000, and he met the auditor at that time; Mr. Carollo specifically confirmed to the auditor that Mr. DelVecchio continued to represent the plaintiff in November 2001. The auditor relied on Mr. DelVecchio’s apparent authority to consent to waive the statute of limitations, since she could have made an estimated assessment at any time prior to the running of the limitations period, but instead waited until the audit was complete before finalizing the assessment. N.J.S.A. 54:49-6(a); see also, N.J.S.A. 54:32B-19, directing the Division to estimate sales and use tax due from the information that is available, where a return is incorrect or insufficient. Under the foregoing circumstances, the auditor’s reliance on Mr. DelVecehio’s authority to act for the plaintiff was reasonable.
*399 Plaintiff argues that, because the Division had difficulty in contacting Mr. DelVecchio during the course of the audit, any reliance the Division placed on his apparent authority was unreasonable. This ignores that Mr. DelVecchio was Mr. Carollo’s choice and not the Division’s. His representation of the plaintiff was confirmed to the Division by Mr. Carollo in the November 2001 telephone conversation.
For the foregoing reasons, plaintiffs motion to invalidate assessments covering periods prior to June 1, 1998 is denied, and this matter will proceed to discovery and trial. Defendant’s counsel will submit a form of order pursuant to R. 4:42-1 (c) no later than June 24, 2005.

The court has not been provided with copies of or the dates on which corporation business tax returns and gross income withholding tax returns were filed. If the court finds that the consents signed by the accountant are invalid, there is still an issue of material fact as to whether the statutes of limitations for assessments of those taxes have run.

 The parties stipulated that Mr. DelVecchio's deposition testimony was to be admitted into evidence in lieu of his personal appearance at the hearing.

 Ms. Mester had been working for the Division as an auditor about two years at the commencement of the audit.