104 N.J. Super. 35 (1968)
248 A.2d 446
BANK OF AMERICA, NATIONAL TRUST AND SAVINGS ASSOCIATION, PLAINTIFF,
v.
CAROL HOROWYTZ, DEFENDANT.
Superior Court of New Jersey, Bergen County Court, Law Division.
Decided December 3, 1968.
*37 Mr. Milton T. Lasher for plaintiff.
Mr. Kenneth F. Lay for defendant (Messrs. Spingarn & Sachs, attorneys).
O'BRIEN, J.C.C.
This is a suit on a promissory note, dated October 26, 1961, signed in the name of defendant, "Carol Horowytz d/b/a E.D.S. by J. Pearl," and endorsed on the reverse side by "Jack Pearl."
Defendant has admitted in the pretrial order that J. Pearl is her father and that he engaged in business in defendant's name from time to time.
*38 It appears from the exhibits introduced into evidence that on April 8, 1957 a checking account was opened with plaintiff bank in the name of defendant, doing business under the tradename E.D.S., as a men's clothing business at 957 Market Street, San Francisco, California. The signature card, containing defendant's authorized signature, also contains the statement, "J. Pearl power of attorney attached." The original of this "signature card: power of attorney" was received into evidence and defendant admits signing it.
No oral testimony was offered by either party. The evidence consisted of the admissions contained in the pretrial order and the instruments introduced into evidence. The question presented is whether J. Pearl had the authority to obligate defendant on the note in question. Plaintiff relies solely upon the power of attorney as establishing such authority.
Thus the court is called upon to determine whether the power of attorney can be construed as clothing the attorney-in-fact with the authority to borrow on behalf of defendant principal.
A power of attorney is an instrument in writing by which one person, as principal, appoints another as his agent and confers upon him the authority to perform certain specified acts or kinds of acts on behalf of the principal. The primary purpose of a power of attorney is not to define the authority of the agent as between himself and his principal, but to evidence the authority of the agent to third parties with whom the agent deals. 3 Am. Jur.2d, Agency, § 23, p. 433.
The authority to borrow money on the credit of the principal is among the most important and also dangerous powers which a principal can confer upon an agent, since manifestly there is a great possibility of the abuse of the power. For this reason, in the absence of express authority, the authority of an agent to borrow on the principal's credit will not be inferred unless it is necessarily implied by the scope and character of the authority which is expressly *39 granted. 3 Am. Jur.2d, Agency, § 88, p. 490. Unless otherwise agreed, an agent is not authorized to borrow unless such borrowing is usually incident to the performance of acts which he is authorized to perform for the principal. Restatement, Agency 2d, § 74, p. 192.
These principles have been well expressed by the court in Williams v. Dugan, 217 Mass. 526, 105 N.E. 615, L.R.A. 1916C 110 (1914):
"The power to borrow money or to execute and deliver promissory notes is one of the most important which a principal can confer upon an agent. It is fraught with great possibilities of financial calamity. It is not lightly to be implied. It either must be granted by express terms or flow as a necessary and inevitable consequence from the nature of the agency actually created."
Courts are reluctant to find an authority to borrow where such authority is not explicitly conferred. 55 A.L.R.2d, p. 1215 (in particular, § 3(b), p. 1221 and § 5, p. 1228). See Consolidated National Bank v. Pacific Coast S.S. Co., 95 Cal. 1, 30 P. 96 (1892).
Since the determination of this case rests entirely upon a construction of the power of attorney, it is set forth herein in full.

*40 It is apparent that the authority to borrow money is not given to the attorney-in-fact in so many words. Thus, it becomes necessary to determine whether such authority may be implied by a reasonable construction and interpretation of the instrument, or whether such power may be inferred or necessarily implied by the scope and character of the authority which is expressly granted.
The power of attorney was executed in California and the court must therefore construe it in accordance with the laws of that state.
The instrument delegates power "to sign and endorse checks, notes and drafts and transact all business with your Day and Night Branch San Francisco Calif." The delegation is in both specific and general terms. If the power to borrow money is necessarily to be implied by the terms of the instrument, it must be expressed by the specific terms "sign * * * notes" rather than by the general term "and transact all business." For, by the law of California:
"When authority is given partly in general terms and partly in specific terms, the general authority gives no higher powers than those specifically mentioned." Byer v. Canadian Bank of Commerce, 8 Cal.2d 297, 65 P.2d 67, 69 (1937), citing Cal. Civil Code, § 2321.
Focusing, therefore, on the words "sign * * * notes," plaintiff construes that language to mean "make and deliver promissory notes as evidence of a debt," i.e., the power to borrow money. Defendant, on the other hand, construes the same language to mean "endorse notes presented for payment" or "sign notes payable at the bank", which amounts to an authorization to the bank to pay such notes from funds credited to the checking account.
Powers of attorney are to be construed in accordance with the rules for the interpretation of written instruments generally. 3 Am. Jur.2d, Agency, § 28, p. 436 (citing Todd v. Superior Court, 181 Cal. 406, 184 p. 684, 7 A.L.R. 938 (1919)).
*41 It is a general rule of construction, and it is the rule in California, that in case of uncertainty in a contract, it is to be construed most strongly against the party who caused the uncertainty to exist  the party drafting the instrument. Burr and Ladd, Inc. v. Marlett, 230 Cal. App.2d 468, 41 Cal. Rptr. 130 (1964). As otherwise expressed, a contract is to be construed most firmly against the party who drafts or supplies it. Warshauer v. Bauer Construction Co., 179 Cal. App.2d 44, 3 Cal. Rptr. 570 (1960), citing Cal. Civil Code, § 1654; Distillers Distributing Corp. v. J.C. Millett Co., 310 F.2d 162 (9 Cir. 1963); Riess v. Murchison, 329 F.2d 635 (9 Cir. 1964), certiorari denied 383 U.S. 946, 86 S.Ct. 1196, 16 L.Ed.2d 209. In New Jersey see Forbes v. First Camden Nat. Bank & Trust Co., 25 N.J. Super. 17, 21 (App. Div. 1953), a case involving the construction of a signature card and the rules printed in a passbook.
If the third party who loaned money to the agent was a stranger to the power of attorney, this rule of construction would probably be properly invoked against the principal, who adopted the language used by signing it.
However, in this case, plaintiff lender is not a stranger to the instrument. On the contrary, in connection with the opening of a checking account, it supplied in the form of a signature card, the very power of attorney upon which it now relies. The power does not expressly authorize the agent to borrow money and requires construction and interpretation of the language used. Therefore, it is this court's opinion that the instrument must be construed most strongly against the party supplying it  plaintiff bank.
The instrument expressing the power of attorney is a standard bank form. See, Modern Legal Forms, c. 15, § 1290, p. 610, in which the identical instrument is referred to as "Form No. 37 of the California Bankers Association." It is interesting to note that the form is catalogued by that publication as a "Power of Attorney to Endorse Checks (Short Form)." This seems to be consistent with the legend *42 on the power of attorney in question (not contained on Form No. 37 of the California Bankers Association), "attorney in fact should complete these two lines exactly as checks will be signed." (Emphasis added)
The very next form in the cited publication contains a power of attorney to endorse checks and to execute promissory notes. Modern Legal Forms, c. 15, § 1290.1, p. 611. The latter form, utilizing the language "and to execute in the name of the undersigned, promissory notes" may more strongly suggest the implication of authority to borrow money. Even that language may be insufficient for such an implication. Nonetheless, it seems to this court that if such power is intended to be given, it could and should be expressed in clear, unambiguous language. See, for example, the form of "Declaration of Partnership for Opening and Maintaining Checking Account and Authorizing Loans," Modern Legal Forms, § 1288.2, p. 596, 2(b).
The construction urged by plaintiff was rejected by the English Chancery Division in Jacobs v. Morris (Eng.) (1902) 1 Ch. 816 - CA, cited in 55 A.L.R.2d 1229, a case involving a power of attorney containing similar language.
In any event, the court concludes that it cannot by any reasonable construction or interpretation construe the language used in the power of attorney supplied by plaintiff bank to authorize the attorney in fact to borrow money on the defendant's credit, nor can the court find that such authority is to be necessarily implied by the scope and character of the authority expressly granted.
It is a rule of construction generally, and in California, that a contract should be construed in the context of surrounding circumstances. Kerr Land & Timber Co. v. Emmerson, 233 Cal. App.2d 200, 43 Cal. Rptr. 333 (1965).
It appears that the primary transaction between plaintiff and defendant, at the time of the execution of the power of attorney, was the opening of a business checking account. It is difficult to conceive that in opening this checking account *43 defendant intended to authorize her father to borrow such unlimited amounts of money as plaintiff bank would loan him and which she would be obligated to repay. It is more logical to conclude from the evidence that defendant only intended to empower her father "to sign and endorse checks, notes and drafts and transact all business" in connection with that checking account.
In addition to the authority to borrow which may be directly granted or which may be indispensable to the execution of the powers actually conferred, an agent may have an apparent authority to borrow money on the credit of his principal  for example, where such borrowing has been approved by a long course of dealing of such a nature as must inevitably have become known to the principal. 3 Am. Jur.2d, Agency, § 88, p. 491.
The burden of proof rests upon plaintiff to establish its claim by a preponderance of the evidence. Here, plaintiff has relied solely upon the admissions in the pretrial order and the documentary evidence. There has been no testimony adduced to indicate any prior transactions between the parties nor the circumstances surrounding the opening of the checking account and the execution of the power of attorney; nor any other facts upon which an ostensible or apparent agency may be established. There is no indication as to the disposition of the funds which were borrowed by Mr. Pearl, whether they had any connection with the defendant's business, or that the attorney-in-fact had on any prior occasion borrowed funds in connection with the operation of such business. It is noted that plaintiff bank called upon Mr. Pearl to personally endorse the promissory note in question, from which it may be fairly inferred that it relied upon his credit for the repayment of this loan, at least in part, rather than wholly upon the credit of defendant.
Accordingly, for the reasons herein stated the court concludes that the power of attorney does not contain an express or implied grant of power to borrow money; nor may such *44 power be inferred as necessarily implied by the scope and character of the authority which is expressly granted; nor has any evidence been adduced of any apparent or ostensible power given to the attorney-in-fact sufficient to bind defendant principal. Judgment will therefore be in favor of defendant.