271 N.J. Super. 558 (1994)
638 A.2d 1383
FRANK G. KISSELBACH, AS AN INDIVIDUAL, AND AS ADMINISTRATOR AD PROSEQUENDUM FOR THE ESTATE OF FRANK H. KISSELBACH, PLAINTIFFS-APPELLANTS,
v.
COUNTY OF CAMDEN, LAKELAND HOSPITAL, CARE INN, AND JOHN DOES 1 THROUGH 100, J/S/A, DEFENDANTS-RESPONDENTS,
v.
COORDINATED HEALTH SERVICES OF NEW JERSEY, P.A.; RAINBOW HEALTHCARE ASSOCIATES, P.C.; AND KENNEDY MEMORIAL HOSPITALS  UNIVERSITY MEDICAL CENTER, J/S/A, THIRD-PARTY-DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Submitted March 16, 1994.
Decided March 31, 1994.
*559 Before Judges SHEBELL and LONG.
Clifford L. Van Syoc, attorney for appellant (Benjamin Folkman and Evan A. Blaker, on the brief).
*560 Richard S. Mroz, Camden County Counsel, attorney for respondents, County of Camden and Lakeland Hospital (Cynthia E. Covie, Assistant County Counsel, on the brief).
Montano, Summers, Mullen, Manual, Owens & Gregorio, attorneys for respondent, Care Inn (F. Herbert Owens, III, of counsel; Robin D. Schnepf, on the brief).
The opinion of the court was delivered by SHEBELL, P.J.A.D.
Plaintiff, Frank G. Kisselbach, as an individual and as administrator ad prosequendum of the estate of his father, Frank H. Kisselbach, brought suit on December 20, 1990, against defendants, County of Camden and Lakeland Hospital (County defendants), and Care Inn. These defendants operated medical or nursing facilities in which decedent had been treated during the last year and a half of his life. The complaint and amended complaint alleged negligence and malpractice, intentional torts and wrongful death. The entire suit was eventually dismissed by the grant of a series of partial summary judgment motions. The counts of intentional torts as against the County defendants were dismissed under the Tort Claims Act. The wrongful death counts were dismissed due to the alleged lack of qualification of plaintiff's expert. Finally, the survival action counts were held to be barred by the statute of limitations. After final judgment, plaintiff presented an additional report by a medical expert, however, plaintiff's motion to reinstate the wrongful death counts was denied.
Plaintiff seeks reversal because: (1) the statute of limitations was erroneously applied in that the power of attorney making plaintiff the decedent's attorney-in-fact did not enable him to sue on the decedent's behalf while decedent was alive; (2) the power of attorney was defective, and thus without legal effect; (3) the motion to reinstate the wrongful death claims was timely; and (4) the additional medical report required vacation of the partial summary judgment on the wrongful death count.
*561 Plaintiff's amended complaint contained seven counts. Count one alleged wrongful death by reason of negligent care by Care Inn; count two alleged the same against the County defendants; count three alleged wrongful death caused by negligent care provided by the John Doe defendants at Care Inn; count four alleged negligent care by the John Doe defendants at Lakeland Hospital; count five alleged wrongful death against all defendants; count six alleged outrageous and intentional infliction of emotional distress by all defendants; and count seven alleged intentional, wrongful, wanton and reckless misconduct against all defendants.
In April 1992, the County defendants moved for summary judgment seeking to dismiss: counts two and four based on the bar of the statute of limitations; counts two, four and five based on failure to provide expert reports; and counts six and seven based on the public entity immunity from liability for the intentional acts of employees provided in the Tort Claims Act, N.J.S.A. 59:2-10. Care Inn joined in the motion. Plaintiff conceded that counts six and seven should be dismissed as to the County defendants only, but argued that the survival counts were timely because they had been tolled by the decedent's insanity, and that an extension of time to provide expert reports should be afforded to plaintiff.
Oral argument was held on May 29, 1992, and on June 9, 1992, an order was entered that dismissed counts six and seven as to the County defendants. The judge in that order scheduled a Lopez hearing[1] at which plaintiff was to produce evidence of the decedent's insanity. He also required that plaintiff produce expert reports and answer interrogatories.
On October 21, 1992, plaintiff produced an expert report dated July 13, 1992, by William L. Nellis, a hospital administrator, and a supplemental report dated October 15, 1992. The judge ruled that the reports were sufficient to withstand summary judgment motions on the negligence and malpractice claims, but not on the *562 wrongful death claim. He dismissed both the County defendants and Care Inn on the wrongful death claim (count five). In his order of November 2, 1992, the judge granted the motions to dismiss the wrongful death claim as against both the County defendants and Care Inn. He denied the motions to dismiss the negligence and malpractice claims subject to later determinations as to compliance with the statute of limitations.
On November 4, 1992, the court conducted a Lopez hearing to determine whether plaintiff was entitled to relief from the statute of limitations bar of N.J.S.A. 2A:14-2.
The court issued an opinion finding that the decedent was "insane" for the purposes of N.J.S.A. 2A:14-21 almost from the time of his admission to Care Inn on December 2, 1987, until the time of his death at Kennedy Memorial Hospital on December 20, 1988. The judge held, however, that based on the power of attorney executed by decedent on March 25, 1987, plaintiff could have sued on behalf of his father and, therefore, the statute was not tolled. The judge also held that plaintiff knew of the factual basis for the cause of action at least by December 8, 1988, which would render untimely any claim filed after December 8, 1990. Therefore, the remainder of the complaint against the County defendants and Care Inn was dismissed based on the statute of limitations bar.
On December 15, 1992, the court ordered dismissal of all counts remaining against Care Inn. On December 21, 1992, plaintiff filed a motion to vacate the November 2, 1992 order dismissing the wrongful death claims. After a hearing on January 8, 1993, the court, after reviewing a medical report and opinion submitted by plaintiff, denied that motion.
The undisputed facts reflect that on March 25, 1987, the decedent executed a power of attorney in favor of his son, Frank G. Kisselbach. Between December 2, 1987, and the decedent's death on December 20, 1988, at the age of 89, he was a patient in various institutions, including the facilities of defendants and third-party defendants. The first placement at Care Inn was made because *563 the decedent had had a series of small strokes and could no longer be cared for at home. The death certificate attributed his death to arteriosclerotic vascular disease, and listed severely infected decubiti (bedsores) as a significant contributing condition.
The power of attorney stated:

GRANT OF AUTHORITY: I appoint You to act as my Agent (called an attorney in fact) to do each and every act which I could personally do for the following uses and purposes: To execute, sign, endorse or negotiate any and all legal documents including, but not limited to checks, agreements, notes, drafts, deeds, mortgages, contracts or other such similar documents.

POWERS: I give You all the power and authority which I may legally give to You. You may revoke this Power of Attorney or appoint a new Agent in your place. I approve and confirm all that You or your substitute may lawfully do on my behalf.

I
Plaintiff concedes that the survival action, brought as administrator of his father's estate under N.J.S.A. 2A:15-3, accrued on the date of the alleged improper acts or omissions, not on the date of death. See Lawlor v. Cloverleaf Memorial Park, Inc., 101 N.J. Super. 134, 147, 243 A.2d 293 (Law Div. 1968), rev'd on other grounds, 106 N.J. Super. 374, 256 A.2d 46 (App.Div. 1969), rev'd on other grounds, 56 N.J. 326, 266 A.2d 569 (1970). He maintains, however, that the decedent's insanity tolled the statute of limitations during decedent's lifetime. N.J.S.A. 2A:14-21.
The judge found that the decedent was insane, for purposes of tolling, for nearly the entire period of his hospitalization, and defendants do not dispute this. Nonetheless, defendants urge, and the judge concluded, that the statute was not tolled because plaintiff had been appointed the decedent's agent, and had knowledge of the cause of action at least since December 8, 1988. This knowledge, the judge held, must be imputed to the principal. The court further held that the power of attorney bestowed on plaintiff the authority, and imposed on plaintiff the duty, to initiate an action on behalf of the decedent within the period of the statute of limitations without benefit of tolling.
*564 We do not agree with this conclusion. "A power of attorney is an instrument in writing by which one person, as principal, appoints another as his agent and confers upon him the authority to perform certain specified acts or kinds of acts on behalf of the principal." Bank of Am., Nat'l Trust & Sav. Ass'n v. Horowytz, 104 N.J. Super. 35, 38, 248 A.2d 446 (Cty.Ct. 1968). Its primary purpose is not to define the authority conferred on the agent by the principal, but to serve as evidence to third persons of agency authority. Ibid. It should be construed in accordance with the rules for interpreting written instruments generally. Id. at 40, 248 A.2d 446.
The parties focus their arguments on the scope of authority conferred by the instrument. However, regardless of the extent of authority conferred, the instrument was of no effect once the decedent became incompetent. The finding that the decedent was insane as of February 27, 1988, at the latest, is undisputed. The judge recognized that, ordinarily, the insanity of a principal revokes the authority of his agent, citing Maihack v. Mehl, 141 N.J. Eq. 281, 288, 57 A.2d 44 (Ch. 1948), but reasoned that the rule did not apply here because it was the decedent's oncoming incompetency that created the need for the attorney-in-fact. See Foster v. Reiss, 18 N.J. 41, 54-55, 112 A.2d 553 (1955) (holding authority of agent to make principal a party to transaction terminates whenever principal loses capacity to become a party).
The power of attorney enabling statute, N.J.S.A. 46:2B-8, enacted in 1972, permits the creation of a durable power of attorney, which can survive, or become effective upon, the principal's insanity or other disability, if, and only if, the writing expressly so provides. 6 New Jersey Practice, Wills and Administration § 746.5 (Alfred C. Clapp & Dorothy G. Black) (rev. 3d ed. 1984). The present power of attorney contains no such express provision. This enactment prevents a court from giving the same effect by mere implication of the circumstances. Once the decedent became insane, the limited power of attorney he granted was no longer effective.
*565 Further, the grant of power does not give plaintiff the express authority to initiate litigation. Although actual agency authority may be implied, no more is implied than authority "to do what [the agent] may reasonably infer the principal desires him to do in light of the principal's manifestations and facts as he knows or should know them when he acts." Lampley v. Davis Mach. Corp., 219 N.J. Super. 540, 548-49, 530 A.2d 1254 (App.Div. 1987); see Restatement (Second) of Agency §§ 26 & 33 (1958) (authority may be created by words or conduct that agent reasonably believes indicate principal's desires, but no more is authorized). Here, plaintiff believed that the purpose of the instrument was to enable him to sign checks and the legal documents enumerated in the text. The circumstances under which it was executed made that a reasonable assumption.
Even assuming that the power of attorney were sufficient to confer authority to bring suit, the grant of such authority would not, in our view, create a duty to do so where the agent was not expressly empowered to do so and was not reasonably aware of the alleged authority. The motion judge erroneously imposed that duty so as to override the tolling provision of N.J.S.A. 2A:14-21. The aim of the tolling statute is "to relieve from the strict time restrictions any person who actually lacks the ability and capacity, due to mental affliction, to pursue his lawful rights." Sobin v. M. Frisch & Sons, 108 N.J. Super. 99, 104, 260 A.2d 228 (App.Div. 1969), certif. denied, 55 N.J. 448, 262 A.2d 702 (1970). The statute does not condition tolling on the absence of others who may be legally authorized to act for the insane person.
The judge here relied on Kyle v. Green Acres at Verona, Inc., 44 N.J. 100, 112, 207 A.2d 513 (1965), in which the Supreme Court cited, as a factor to be considered in determining application of an equitable statute of limitations defense, "whether plaintiff's suit was started within a reasonable time after restoration of sanity or after the appointment of a guardian or committee who knew or should have known of the cause of action." (Emphasis added). *566 The judge equated a guardianship with a power of attorney, noting that they could perform the same function.
There is, however, a difference. A guardianship follows incapacitation and is undertaken in response to it. Thus, it is reasonable to shift the burden of deciding to sue to the guardian. Contrast this to a power of attorney which cannot be executed by an incapacitated principal, must predate any incapacitation, and does not divest the principal of any authority. It would be unreasonable to conclude that the later onset of incapacity, which divests the principal of ability and authority, thereby shifts to the agent the burden of deciding to sue. Such a conclusion would impose on the agent the need to determine timely when the capacity of the principal ended, thereby leading to speculation and further controversy. We hold that the survival claims are not barred by the statute of limitations.

II
Plaintiff argues that his motion to vacate the November 2, 1992 order granting summary judgment on the wrongful death claims although filed on December 21, 1992, was timely despite its being filed after the December 16, 1992 entry of final judgment. Defendants maintain that the motion was untimely as plaintiff attempted, after the entry of final judgment, to challenge for the first time an interlocutory order which was subject to reconsideration only before final judgment. Although the court found the motion untimely, it, nevertheless, considered the motion under R. 4:50, and denied it on the merits.
Plaintiff contends that he was unfairly surprised by the December 7, 1992 order dismissing the remaining counts against the County defendants, and by the December 15, 1992 order dismissing Care Inn, the remaining defendant. He points to the October 21, 1992 hearing wherein the judge indicated that plaintiff would have the opportunity to seek reinstatement of the wrongful death claims once he obtained a supplemental expert.
*567 Plaintiff, in effect, sought not merely revision of the earlier interlocutory order, but vacation of the judgment finally disposing of the entire case. Plaintiff expressly moved under R. 4:50-1(f), although he failed to file a brief as the rule requires. Plaintiff's motion was timely under R. 4:50-1(f), which provides for relief from a final judgment in exceptional cases. The time for filing is limited only to a reasonable time. R. 4:50-2. Plaintiff's motion was filed five days after entry of final judgment.

III
As to the merits, plaintiff contends that the judge wrongly characterized the supplemental expert report he submitted with his motion for vacation of the judgment as a net opinion and insufficient to establish negligence. We find the medical report sufficient to create a prima facie case and, in light of our reversal of the dismissal of the survival counts, we see no reason to preclude as untimely plaintiff's proffer of the expert's report supporting the wrongful death action.
On October 21, 1992, the motion judge granted defendants' motion for summary judgment dismissing the wrongful death claims because he found the July 13, and October 15, 1992, reports of William L. Nellis, a former hospital administrator, insufficient to support a claim of wrongful death. Although Nellis opined that defendants' deviations from acceptable standards of nursing home administration "substantially contributed to Mr. Kisselbach's deteriorating condition, pain, suffering and subsequent death," the judge correctly concluded that Nellis, not being a medical doctor, was not qualified to establish a causative link.
Plaintiff's motion to vacate the earlier order of partial summary judgment on the wrongful death claims sought leave to furnish an additional expert report by January 8, 1993. On January 7, 1993, plaintiff's counsel submitted a supplemental certification attaching a report by Dr. Alfred M. DiPiero. Dr. DiPiero, who had attended the decedent from November 28, 1988, until his death, described the decedent's condition on admission to Kennedy Memorial *568 Hospital on that date, explaining that he was sent from Lakeland because of an "apparent cerebral vascular accident," and that he was febrile, dehydrated, and had a decubitus ulcer. He noted a "question of sepsis" and a "history of dementia." The sacral decubitus ulcer was a Stage II when decedent was discharged back to Lakeland, and was worse, and secondarily infected, when he was readmitted to Kennedy on December 6, 1988. DiPiero opined the following, based on reasonable medical probability: "In reviewing the report of Mr. Nellis, I concur with his conclusions [that] the decubitus ulcers were as a result of his mistreatment at Lakeland and these ulcers led to his death." Plaintiff's counsel conceded at the January 8, 1993 hearing that the doctor's report did not implicate Care Inn, and orally modified the motion to vacate the dismissal as to the County defendants only.
The judge improperly characterized the additional report as a "net opinion." He stated:
I've read Dr. DiPiero's letter and it simply states, I concur in the conclusions of Mr. Nellis that the ulcer resulted in mistreatment at Lakeland and led to his death. It does not indicate what the standard of care is, it does not indicate how it was violated, does not indicate what was the mechanics of a bedsore, ulcer leading to death. It is plain and simply a net opinion on behalf of Dr. DiPiero and I don't think that that is sufficient to establish negligence on behalf of the defendants in this case.
A "net opinion" is an expert opinion that is inadmissible at trial because it is a bare expression of conclusions unsupported by factual evidence. Buckelew v. Grossbard, 87 N.J. 512, 524, 435 A.2d 1150 (1981). The wrongful death claims asserted are in the nature of medical malpractice, and require expert testimony to establish the standard to which the defendant failed to adhere. Rosenberg by Rosenberg v. Cahill, 99 N.J. 318, 325, 492 A.2d 371 (1985). DiPiero opined that the decubitus ulcers "were as a result of [the decedent's] mistreatment at Lakeland," and that they "led to his death."
We recognize that, although he concurred with Nellis' conclusion, he gave no indication of what constituted that "mistreatment" or how defendants deviated from the appropriate standard of care *569 so as to cause death. Nonetheless, summary judgment is only proper where there is no genuine issue as to any material fact. R. 4:46-2. It is an extraordinary measure to be taken only with extreme caution, especially when a cause of action rests upon expert testimony. Hearon v. Burdette Tomlin Memorial Hosp., 213 N.J. Super. 98, 104-105, 516 A.2d 628 (App.Div. 1986). Although the medical report is weak, the preferred course is to deny summary judgment and permit the matter to proceed, so that the expert's opinion can be fleshed out. Dismissal under R. 4:37-2(b) may be granted at trial if necessary. Id. at 104, 516 A.2d 628.
All of the survival claims as they pertain to Care Inn must be reinstated because the statute of limitations was tolled during decedent's incompetency. The wrongful death claims against the County defendants only are hereby reinstated.
Affirmed in part; reversed in part.
NOTES
[1] Lopez v. Swyer, 62 N.J. 267, 300 A.2d 563 (1973).