**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3023-18T1

OLUSEGUN AWONUSI,

    Plaintiff-Respondent,

v.

KENNETH YABOH,

    Defendant-Respondent,

and

FAMEK MANAGEMENT CORP.,

    Defendant-Appellant.

_____

          Submitted February 24, 2020 – Decided March 5, 2020

          Before Judges Sabatino and Geiger.

          On appeal from the Superior Court of New Jersey, Chancery Division, Hudson County, Docket No. C-000128-17.

          Alter & Barbaro, attorneys for appellant (Do Kyung Lee, of counsel and the briefs).

Stephen S. Berowitz, attorney for respondent Olusegun Awonusi (Stephen S. Berowitz, of counsel and on the brief).

PER CURIAM

This case arises out of a scheme to transfer an absent owner's title to real property without his authorization. After a non-jury trial, the court concluded that defendant Kenneth Yaboh breached his fiduciary duties to the absent owner, plaintiff Olusegun Awonusi, and defrauded him by transferring Awonusi's parcel to co-defendant Famek Management Corp. ("Famek"). The court additionally found that Yaboh and Famek were jointly liable to Awonusi for conversion, and had been unjustly enriched. The court accordingly rescinded the property transfer, restored title to Awonusi, and found Yaboh, who had defaulted in the case, liable for $100,000 in punitive damages.

Famek appeals, contending the trial court misapplied legal and equitable principles in finding liability and rescinding the transfer. Among other things, Famek argues it appropriately relied on a power of attorney presented by Yaboh in acquiring the property. Famek also contends it did not engage in conversion and was not unjustly enriched. We affirm.

I.

Awonusi is a professor of English linguistics who currently teaches and

resides in Nigeria. In October 2011, he purchased real property located on Van Nostrand Avenue in Jersey City, for $100,000. Awonusi intended to stay at the property when visiting his children in the United States. Because he was living abroad, Awonusi asked his friend Yaboh to help him find a property and represent him during the purchase.

Awonusi subsequently entrusted Yaboh to manage the property in his absence. According to Yaboh, he found a tenant for the first-floor unit and was responsible for collecting rent, which was to go towards taxes and maintenance. When Yaboh asked Awonusi for more money to perform additional repairs, Awonusi sent the requested funds. Yaboh presented Awonusi with a June 28, 2012 letter, purportedly documenting receipt and deposit of this money into an attorney escrow account. The letter was addressed to Weichert Realtors from Emmanuella M. Agwu, Esq.[1] However, Yaboh admitted at trial that he forged the letter and kept the money. Awonusi was unaware of Yaboh's deception at the time.

---

[1] The record is unclear about the exact nature of Yaboh's arrangement with Agwu and Weichert Realtors. However, Yaboh testified that "most of the purchases" related to maintenance of the property were paid through Agwu's escrow account.

A-3023-18T1

That same year, Awonusi decided he wanted to sell the Van Nostrand property and once again enlisted Yaboh to represent him in the transaction. Awonusi granted Yaboh a power of attorney, witnessed by a Nigerian attorney, with specific terms limited to a real estate sale. Yaboh later informed Awonusi that a new power of attorney, signed and notarized at the U.S. Consulate, was needed.

On January 28, 2013, Awonusi executed this second power of attorney with substantially the same terms. The document gave Yaboh the authority:

> a. To execute contracts, deeds, affidavits, survey affidavits, RESPA, IRS 1099 and all forms and documents required in connection with the sale by me of my real property located and described as follows: 211 Van Nostrand Ave Jersey City 07305, also known as Lot 4 Block 26401, State of New Jersey.
>
> b. To attend the closing of title and deliver the deed, affidavit of title, survey affidavit, and other closing forms and documents;
>
> c. To represent me in all respects at the closing including but not limited to the negotiation, payment and settlement of all adjustments, liens, claims and encumbrances;
>
> d. To receive all proceeds from the sale of the property, including any refund of escrow funds or other mortgage payments;

4

e. To forward to me all of the funds received from the sale of the property, after the payment of attorney fees to my attorney;

f. To do all acts that I might or could have done in the sale of the property.

In November 2012, unbeknownst to Awonusi, Yaboh used the Van Nostrand property as collateral for a $35,000 loan from Famek, a New York corporation solely owned by Frank Emeka. Yaboh testified he needed the money to fund a separate and personal business matter regarding his gas station. As a result, the loan was made out to Yaboh's corporation, ETI Petroleum Inc. ("ETI Petroleum"). Yaboh and Emeka struck an oral agreement, providing that, in exchange for the $35,000 loan, Yaboh would repay Famek $45,000 three months later. If Yaboh failed to repay in full, Famek would pay Yaboh an additional $35,000 and the collateral property would be transferred to Famek. Yaboh characterized the deal as a "hard money" loan. No written loan agreement was drawn up.

Famek is a real estate and property management company. Its principal, Emeka, has been in the real estate business for over a decade. Although Emeka is not a licensed money or mortgage lender, he testified that he sometimes will loan money to friends and acquaintances in connection with real estate transactions. Emeka met Yaboh through his friend Brent Blackman, a real estate

broker with whom he had made previous deals. Emeka did not know Yaboh prior to their agreement, but testified that he was willing to make the loan because he trusted his connection, Blackman.

To prove ownership of the property, Yaboh presented Emeka with the power of attorney, the deed, and a copy of the $100,000 cashier's check made out to the previous owner's attorney, Michael Werner, Esq., remitted in Yaboh's name. Based on these three documents, Emeka claimed he was satisfied that Yaboh was the true owner of the property and had authority to use the property as security for the loan. Emeka testified that he believed Awonusi was merely a "straw buyer." He did not attempt to reach out to Awonusi to clarify this supposed arrangement, testifying at trial that he "wasn't interested in who is the owner to question it."

When Yaboh attempted to repay the loan on January 23, 2013, his check bounced. Yaboh then requested the second power of attorney from Awonusi.

On March 7, 2013, Yaboh, ostensibly under the second power of attorney, transferred Awonusi's property to Famek. The consideration recorded on the deed was $0.00. No affidavit of title was presented. No contract of sale was executed. No formal inspection of the property was conducted. Famek wrote a

6

check for the agreed-upon $35,000 payment, made out directly to Yaboh. Awonusi did not receive any of the money.

After the transfer, Famek learned that Yaboh had failed to pay property taxes and that a sizable tax lien had been placed on the property. On December 29, 2014, Famek paid off the tax lien, totaling $34,418.98. Famek made various improvements to the premises and ultimately entered into a contract to sell the property for $315,000. However, that sale was never consummated.

Meanwhile, frustrated with a lack of communication from Yaboh, Awonusi made other arrangements to sell the property. On April 20, 2015, Awonusi executed a power of attorney granting his daughter, Abiodun Awonusi, authority to effectuate the sale and invalidating the previous power of attorney granted to Yaboh. Under that power of attorney, Abiodun listed the property with realtor Sonia Quintero. On December 24, 2015, Quintero received a call from Emeka, who informed her that he was the owner of the property and had no intention of selling at that time.

That same day, Awonusi sent an e-mail to Yaboh detailing his understanding of the events that had transpired with respect to the Van Nostrand property. He informed Yaboh that he was aware of both the letter from Agwu forged by Yaboh and the impermissible transfer of the property to Famek.

Awonusi urged Yaboh to rectify the situation and return to him rightful ownership of the property. Although Yaboh eventually apologized to Awonusi, he was unable to recover ownership of the property.

Awonusi filed a five-count amended complaint in July 2018 against Yaboh and Famek, in the Chancery Division. The complaint alleged fraud as to Yaboh; fraud as to Famek; breach of fiduciary duty by Yaboh; unjust enrichment of both defendants; and conversion by both defendants. Awonusi sought to have the deed signed by Yaboh to Famek declared void and rescinded, and an order directing Famek to execute a deed returning the property to Awonusi. Awonusi also sought compensatory damages, punitive damages, attorney's fees, and costs.

Famek answered Awonusi's complaint, but Yaboh did not file an answer. The court entered default against Yaboh. A non-jury trial was conducted over two days in November 2018, before Judge Jeffrey R. Jablonski. The court heard testimony from Yaboh, Awonusi, and Emeka.

Judge Jablonski issued a written opinion on February 8, 2019. The judge held that: (1) Yaboh had breached his fiduciary duty to Awonusi; (2) Yaboh had perpetrated a fraud on Awonusi, but Famek had not; (3) Yaboh converted Awonusi's property and Famek was complicit in this conversion; and (4) both Yaboh and Famek were unjustly enriched by the conversion.

A-3023-18T1

Judge Jablonski also made key credibility determinations, finding Awonusi more credible than Yaboh and Emeka. The judge found Awonusi to be "most credible" and "inherently believable." In contrast, the judge noted "a complete lack of credibility" as to Yaboh, and found the circumstances surrounding the transfer of the deed to Famek "suspicious and similarly lack[ing] credibility." In light of the testimony of both Yaboh and Emeka, Judge Jablonski concluded that Famek was not a bona fide purchaser for value.

As a remedy, Judge Jablonski ordered the March 7, 2013 deed void and rescinded, concluding that rescission was "the only appropriate and equitable remedy" under the circumstances. While he recognized that Famek had made investments in the property after obtaining ownership, Judge Jablonski suggested that the appropriate recourse would be for Famek to attempt to recoup its losses through a direct suit against Yaboh. The judge awarded $100,000 in punitive damages against Yaboh but declined to make a similar finding against Famek. The judge denied Awonusi's claim for compensatory damages, reasoning that no evidence or testimony had been provided on the issue.

On appeal, Famek argues the trial court erred in holding it was unjustly enriched, because it paid a total of $104,418.98 for the property, including the loan to ETI Petroleum, the subsequent payment to Yaboh, and the resolution of

the outstanding tax lien. In light of its expenditures, Famek contends that the lower court's finding that it paid "a fraction" of Awonusi's original purchase price is not supported by the evidence. Famek further maintains that an application of the doctrine of unjust enrichment was inappropriate, as there were other remedies available at law.

Famek further argues that the trial court erred by holding that it was complicit in the conversion of Awonusi's property. Famek claims it exercised ordinary care in relying on the power of attorney granted to Yaboh. Famek asserts the trial court's ruling unwisely imposes an elevated standard of care on buyers conducting real estate transactions with sellers who have granted powers of attorney to a representative.

## II.

In considering Famek's arguments, we are guided by established principles of appellate review. An appellate court shall "'not disturb the factual findings and legal conclusions of the trial judge unless [it is] convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice[.]'" Seidman v. Clifton Sav. Bank, 205 N.J. 150, 169 (2011) (quoting In re Trust Created by Agreement Dated December 20, 1961, 194 N.J. 276, 284 (2008)). In

a bench trial setting such as this one, we are bound by the judge's factual findings, so long as they are supported by substantial creditable evidence in the record. <u>Rova Farms Resort, Inc. v. Investors Ins. Co. of Am.</u>, 65 N.J. 474, 484 (1974); <u>see also</u> <u>Brunson v. Affinity Fed. Credit Union</u>, 199 N.J. 381, 397 (2009). We afford special deference to the judge's findings about witness credibility, as the judge had the opportunity to see and hear those witnesses first-hand. <u>State v. Munez-Valdez</u>, 200 N.J. 129, 141 (2009). We only review de novo the judge's decisions on questions of law. <u>Manalapan Realty, L.P. v. Twp. Comm. of Manalapan</u>, 140 N.J. 366, 378 (1995).

Applying these principles here, we reject Famek's arguments and affirm the trial court's decision, substantially for the sound reasons expressed in Judge Jablonski's written post-trial decision. We add only a few comments.

As Judge Jablonski aptly found, there is abundant credible evidence that defendants jointly took part in taking away Awonusi's property without his knowledge and authorization. The power of attorney Awonusi issued to Yaboh had specified limitations that were not followed. Awonusi did not authorize the transfer of his property to pay Yaboh's debts. Although the judge found Yaboh the more culpable of the two defendants, and for that reason singularly imposed

punitive damages upon him, the judge also had ample evidence to conclude Famek was complicit in the wrongful transfer.

We reject, as did the trial judge, Famek's claim that it was entitled to rely on the power of attorney presented by Yaboh. Because the authority to borrow is one of the most consequential powers that can be conferred through a power of attorney, it shall not be inferred in the absence of express authorization "unless it is necessarily implied by the scope and character of the authority which is expressly granted." Bank of America, Nat'l Trust & Sav. Assoc. v. Horowytz, 104 N.J. Super. 35, 38-39 (Cty. Ct. 1968). Just as the power of attorney in Horowytz did not confer the power to borrow money, the power of attorney granted to Yaboh did not authorize using Awonusi's property as collateral for a loan. Furthermore, such authority cannot be reasonably inferred from the express terms. The power to borrow against the property is not necessarily implied by the document's directive to execute "all forms and documents required in connection with the sale." Because Famek's acquisition of the property was predicated entirely on the improper loan agreement, the conveyance cannot be valid.

Although Famek maintains that it exercised ordinary care in relying upon the power of attorney, this claim is unsupported by the record. Emeka testified

that he believed Yaboh was the true owner of the property based on three documents: the power of attorney, the deed, and the $100,000 check made out to the previous owner's attorney, Werner, in Yaboh's name. None of these documents indicated that Yaboh was the property owner.

The power of attorney, by its own terms, only authorized Yaboh to take limited actions regarding the sale of the property. The deed names Awonusi as the grantee; Yaboh's name does not appear anywhere on the deed. Although Yaboh is the remitter of the cashier's check to the seller's attorney, there is nothing on the check that connects it to the real estate sale in question, or that confirms anything beyond the fact that Yaboh was the one who transferred the payment.

Despite a decade of experience in the real estate business, Emeka took no reasonable steps to verify Yaboh's claim to the property. He made no attempt to contact Awonusi to verify his purported "straw man" status and did not request an affidavit of title prior to completion of the sale.

Emeka exercised a similar lack of care in other aspects of the transaction. No promissory note was issued for the initial loan to Yaboh. No contract of sale was executed for the transfer. Emeka did not engage an inspector to evaluate the premises or check whether there were any liens or encumbrances on the

property before the conveyance was finalized.  The entire transaction was highly irregular.

We reject Emeka's contention that the trial court imposed a heightened burden on purchasers who rely on powers of attorney in realty transactions. Given the peculiar and distinctive factors of this case, and the judge's express finding that Famek was "complicit" in wrongdoing, Famek's alleged reliance on the power of attorney is unavailing.

We likewise reject Famek's arguments that it was not unjustly enriched, and that rescission of the property transfer was unfair.  We recognize, as did the judge, that Famek paid money to extinguish the tax lien and forgave its loan to Yaboh.   But Famek confuses principles of consideration with principles of unjust enrichment.  Famek clearly obtained the parcel and enriched itself "at the expense of another," namely Awonusi.  Callano v. Oakwood Park Homes Corp., 91 N.J. Super. 105, 108-09 (App. Div. 1966).  Awonusi did not receive the fair and full monetary value of his property.   Instead, he was swindled behind his back.

The judge appropriately exercised his broad equitable authority in restoring title to its proper owner.  The judge also had ample evidence to find

14

the element of conversion, which Famek at the very least aided and abetted. LaPlace v. Briere, 404 N.J. Super. 585, 595 (App. Div. 2009).

All other points raised on appeal lack sufficient merit to warrant discussion.  R. 2:11-3 (e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION