**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3420-21

BRESHEVEZ MCKENZIE
MOORE, as Mother and Natural
Guardian of Infant, JOSHUA
MOORE,

     Plaintiff-Appellant,

v.

THE CENTER FOR LIFELONG
LEARNING and MIDDLESEX
REGIONAL EDUCATIONAL
SERVICES COMMISSION,

     Defendants-Respondents,

and

(LILY) BAKUL BHABLA and
DARMII MOSQUERA,

     Defendants.

_____

Submitted November 8, 2023 – Decided December 19, 2023

Before Judges Whipple and Mayer.

On appeal from the Superior Court of New Jersey,
Law Division, Somerset County, Docket No.
L-0977-21.

James A. Kay, Jr., attorney for appellants.

Biancamano & DiStefano PC, attorneys for
respondents (James G. Serritella and Robert Arce, on
the brief).

PER CURIAM

Plaintiff Breshevez McKenzie Moore appeals from an order dismissing a complaint filed on behalf of her son, plaintiff Joshua Moore[1] for failure to file a notice of tort claim. We affirm.

Joshua was ten years old in March 2014, and living with cerebral palsy, when he fell exiting a school bus while under the care and supervision of defendant Center for Lifelong Learning overseen by defendant Middlesex Regional Educational Services Commission (defendants) and an employee of the Center. Joshua suffered numerous injuries as a result of the fall.

Defendants' employee prepared an accident report on March 27, 2014, which recounts:

I came off the bus with the help of bus aide, down the
steps of bus. I held [Joshua] by the arm and had his
bag in the other hand. [Joshua] stumbled on the wheel

---

[1] Because plaintiffs share the same last name, we refer to the younger by his first name for clarity's sake; no disrespect is intended.

> space dip. I try to save him from hitting his head but was too late. [Joshua] hurt himself on the chin and was bleeding then. I took him to the nurse for care. I informed what happened.

About a week later, plaintiff complained to the school principal in a telephone conversation. On April 9, 2014, plaintiff sent an email to Joshua's school case manager requesting new protective equipment for Joshua and monitoring of Joshua's safety on and off the bus; the email was acknowledged as received the same day.

Plaintiff's counsel asserted he prepared, and plaintiff signed, a notice of tort claim on December 30, 2014, and sent it to defendants via certified mail that day. Defendants claimed they never received it. Plaintiff's counsel searched his file but was unable to find the certified receipt for the mailing. Joshua turned eighteen on August 6, 2021, and plaintiff was appointed guardian of Joshua's person and property on October 22, 2021.

On July 22, 2021, plaintiff, on Joshua's behalf, filed a complaint asserting claims against defendants and other parties alleging negligence that led to his injuries, and defendants filed their answer on September 29, 2021. The following day, plaintiff's counsel faxed to defendants what he purported was the notice of tort claim referenced in the complaint as Exhibit A.

However, the document was plaintiff's certification in lieu of affidavit to file late notice of tort claim on behalf of Joshua.

Defendants asked plaintiff's counsel to provide a copy of the notice of claim that was filed, together with proof of service. After plaintiff failed to provide a copy of the requested notice, defendants moved to compel plaintiff to produce the notice of tort claim and proof of its service. The trial court issued an order compelling production. Because defendants never received a copy of the notice of tort claim, defendants moved to dismiss the complaint. Plaintiff cross-moved, opposing the motion and seeking leave to file a late notice of tort claim. The trial court granted defendant's motion and denied plaintiff's motion. Plaintiff moved for reconsideration which the trial court denied. This appeal timely followed.

We review a trial court's decision denying reconsideration of its refusal to allow the filing of a late notice of claim for abuse of discretion. See McDade v. Siazon, 208 N.J. 463, 476-77 (2011). Similarly, a trial court's analysis of the New Jersey Tort Claims Act "extraordinary circumstances" exception is also reviewed for abuse of discretion. O'Donnell v. N.J. Tpk. Auth., 236 N.J. 335, 344 (2019); accord N.J.S.A. 59:8-9 (stating that it is "in the discretion of a judge of the Superior Court" whether to grant or deny

4

permission to file a late notice). "[W]hen analyzing pure questions of law raised in a dismissal motion, such as the application of a statute of limitations, [though,] we undertake a de novo review." Smith v. Datla, 451 N.J. Super. 82, 88 (App. Div. 2017) (citing Royster v. N.J. State Police, 227 N.J. 482, 493 (2017)). A "trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Ibid. (quoting Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

The New Jersey Tort Claims Act (the Act), N.J.S.A. 59:1-1 to :12-3, modifies liability for public entities and public employees, permitting aggrieved parties to bring tort actions against such entities only within strictly defined parameters. See O'Donnell, 236 N.J. at 344–45. "The Act's 'guiding principle' is 'that immunity from tort liability is the general rule and liability is the exception.'" Id. at 345 (quoting D.D. v. Univ. of Med. and Dentistry of N. J., 213 N.J. 130, 134 (2013)). As such, the Act mandates a "claimant shall be forever barred from recovering against a public entity or public employee if," among other things, the claimant failed to serve a notice of tort claim on "the public entity within [ninety] days of accrual of the claim except as otherwise provided in N.J.S.[A.] 59:8-9." N.J.S.A. 59:8-8.

"In determining when a cause of action accrues for purposes of [the Act's] notice requirement, common law principles governing accrual of a tort claim apply."  Ben Elazar v. Macrietta Cleaners, Inc., 230 N.J. 123, 127 (2017).  A claim accrues at the time the claimant knows of, or should know of, the allegedly tortious activity giving rise to their claimed injury.  See ibid.; see also Bayer v. Twp. of Union, 414 N.J. Super. 238, 258 (App. Div. 2010) ("In the case of tortious conduct, the date of accrual is the date of the incident on which the tortious conduct took place.") (citing Beauchamp v. Amedio, 164 N.J. 111, 117 (2000)).

Relevant to this appeal, however, the Act specifically provides "[n]othing in [the section requiring a notice of tort claim] shall prohibit a minor or a person who is mentally incapacitated from commencing an action under this act within the time limitations contained herein, after reaching majority or returning to mental capacity."  N.J.S.A. 59:8-8.  Thus, a claim by "a minor or a person who is mentally incapacitated" accrues when the individual in question "reach[es] majority or return[s] to mental capacity."

Also relevant to this appeal, this statute was amended in 2005, and now includes a provision stating "a guardian of the person of a ward shall . . . [i]f necessary, institute an action that could be maintained by the ward including[,]

but not limited to, actions alleging fraud, abuse, undue influence and exploitation." N.J.S.A. 3B:12-57(f)(10) (amended by L. 2005, c. 304, § 39, eff. Jan. 11, 2006). This amendment would appear to create a duty in a duly-appointed guardian to bring suit to protect "the rights and best interest of the ward's personal needs." Ibid. There have been no precedential decisions published that address this amended statute as it relates to the tolling of the ninety-day window to serve a notice of tort claim under the Act.

Plaintiff argues the trial court abused its discretion in denying her leave to file a late notice of tort claim and denying her motion to reinstate her complaint. See N.J.S.A. 59:8-9. She addresses these two issues together and relies on the same arguments in support and in the alternative: her March 9, 2022 cross-motion for leave to file a notice of claim and April 14, 2022 motion for reconsideration were both filed within the one year after the claim's accrual; there were extraordinary circumstances for failure to file notice of claim within the ninety-day deadline; and the delay in serving a notice of tort claim would not have substantially prejudiced defendants as they were well aware of the potential claim. We reject these arguments.

In arguing that the one-year deadline for requesting leave to file a late notice of tort claim had not elapsed, plaintiff asserts Joshua's claim has not yet

7

accrued due to his continued mental incapacity, or—in the alternative—that the claim accrued with her appointment as Joshua's guardian on October 22, 2021. In the former situation, the window to serve a notice of tort claim on defendants remains open. In the latter situation, the initial window to serve a notice of tort claim on defendants closed on January 20, 2022—ninety days after plaintiff's appointment as Joshua's guardian—and her window to seek leave to serve a late notice of tort claim expired on October 22, 2022.

The trial court attempted to parse through the accrual dates, first assigning the date on which Joshua achieved the age of majority—August 6, 2021—as the accrual date and then deciding that plaintiff's claim accrued on October 22, 2021, the guardianship date. We conclude the court reached the correct results but for different reasons.

Prior to the amendments of N.J.S.A. 59:8-8, we looked to the statutory intent as to the effect of a guardian's appointment on the tolling of the statutorily-defined limitation period. In Unkert by Unkert v. Gen. Motors Corp., we held the tolling of the limitations period mandated by N.J.S.A. 2A:14-21 was not altered by the appointment of guardians for the incapacitated party, as such an abridgement "would be contrary to [the statutory] language, and would ignore the fact that so long as the injured party remains

incompetent, [they are] unable to assist in the preparation and presentation of [their] case." 301 N.J. Super. 583, 592 (App. Div. 1997) (cited with approval in Est. of Nicolas v. Ocean Plaza Condo. Ass'n, Inc., 388 N.J. Super. 571, 584 (App. Div. 2006)).

In Kisselbach v. Cnty. of Camden, we said "[t]he statute does not condition tolling on the absence of others who may be legally authorized to act for the [mentally incapacitated] person." 271 N.J. Super. 558, 565 (App. Div. 1994). Discussing a power of attorney, Kisselbach suggested that an agent "expressly empowered" to bring suit on behalf of a mentally incapacitated individual, who was "reasonably aware of the alleged authority" could have a duty to timely bring suit on behalf of the individual that may cause the limitations period to run. Ibid. ("[T]he grant of such authority [to bring suit on behalf of an incapacitated individual] would not, in our view, create a duty to do so where the agent was not expressly empowered to do so and was not reasonably aware of the alleged authority.")

Notably, before it was amended in 2005, N.J.S.A. 3B:12-57 did not compel a guardian to file a lawsuit for personal injuries on behalf of a ward or obligate the guardian to file any notice of tort claim.

9

N.J.S.A. 3B:12-57(f) (amended by L. 2005, c. 304, § 39, eff. Jan. 11, 2006), triggers the Act's notification period to begin running with the appointment of a guardian for an incapacitated person. Thus, plaintiff's initial ninety-day notification period expired on January 20, 2022, and the one-year window in which to seek leave to serve a late notice of claim expired on October 22, 2022, as the trial judge stated.

We also reject plaintiff's assertions of extraordinary circumstances, prejudice, and adequacy of notice. Plaintiff argues she demonstrated sufficiently extraordinary circumstances to justify her late service and the trial court abused its discretion in denying her leave to serve a late notice of tort claim. First, she argues she believed a notice of tort claim had been provided to defendants in December 2014. Next, she identified the following exceptional circumstances: at that time, her attention had been absorbed with dealing with Joshua's ailments, and limitations, then COVID-19 significantly and adversely impacted her life as she then lost her job; she had been unemployed in a full-time capacity since 2019; she lost two brothers, who died as a result of contracting the virus, "all of which . . . took a toll on her both physically and emotionally."

The trial court sympathized with plaintiff's recent hardships but determined the issues she was experiencing did not prevent the filing and serving of a proper notice of claim. The trial court determined plaintiff "was available to sign and/or approve a Notice of Claim, on December 30, 2014" and "was available to sign or approve a . . . notice of claim on July 19 of 2021." The trial court found plaintiff and her counsel did not comply with the notice requirement of the statute and "the reason that the timely notice was not sent was an error of counsel's office." The trial court held "this does not constitute extraordinary circumstances." Having reviewed the record, the trial court was well within its discretion to find that plaintiff's purported extraordinary circumstances were insufficient to support leave to file a late notice of tort claim.

Separate from the question of timeliness, plaintiff argues her obligations were satisfied by both "the accident report prepared by defendants' employee/representative dated March 27, 2014," and by the "12-30-14 . . . written claim . . . incorporated by reference" in her initial complaint filed on July 22, 2021. She argues these "notices" alone are sufficient to satisfy the Act's notice requirement. However, plaintiff's attempt to label the "12-30-14 . . . written claim . . . incorporated by reference" into the July 22, 2021

11

complaint as a notice of tort claim is expressly rejected by our case law. See Guzman v. City of Perth Amboy, 214 N.J. Super. 167, 172 (App. Div. 1986).

The accident report advanced as a potential substitute for the notice of tort claim falls short of providing the information required in a notice of tort claim. The accident report only recounts the details of the accident and does not include the other information necessary to satisfy the Act's notice requirements. See N.J.S.A. 59:8-4(a)-(b), (d)-(f). As our Supreme Court made clear in H.C. Equities, notice of tort claim must be made in a single document and that "the public entity [cannot be] required to analyze multiple communications and determine whether, viewed in the aggregate, they reveal an intent to sue." 247 N.J. 366, 387 (2021). The March 27, 2014 accident report, the July 22, 2021 complaint, and the "12-30-14 . . . written claim . . . incorporated by reference" may not be read together to suggest plaintiff's substantial compliance with the Act's notice requirement.

Any remaining arguments raised by the plaintiff are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3420-21